MADDEN v. PORT ROYAL &c. RAILWAY CO.

1. CHARGING JURIES.—In determining whether error has been committed in charging a jury, the charge must be considered as a whole.

2. IBID.—PASSENGERS—STATIONS.—In charging the jury, the trial judge did not err in stating the case as made by the pleadings, rather than as made by the proof, especially as the difference between "providing a suitable stopping place for passengers," and carrying a passenger beyond the suitable place provided, is not material.

3. IBID.—MISNOMER OF DEFENCE.—In alluding to the defence of contributory negligence as a counter-claim, the trial judge was technically in error in his charge, but his meaning was clear, and no harm was done.

4. IBID.—ADMISSIONS.—In charging as to "disputes," "allegations," and

"admissions," no error was committed, such charge being in accordance with the declarations of counsel as made in argument, though not sustained by the pleadings.

5. NEGLIGENCE—DUTIES OF CARRIER—COURT AND JURY.—Negligence is a mixed question of law and fact. The judge should declare what is negligence, and leave it to the jury to say whether the facts make negligence as thus defined; but it is also proper for the judge to state to the jury, as matter of law, what are the duties of a common carrier towards its passengers.

6. COMMON CARRIERS—ASSISTING PASSENGERS—CASE CRITICISED.—Where a passenger on a railroad train is suffering from a physical infirmity, known to the conductor, which requires special assistance in getting off of the train at her destination, it is the duty of the carrier to render such assistance. This case distinguished from Renneker *v.* South Carolina Railway Company, 20 S. C., 222.

7. IBID.—IBID.—RECOLLECTION.—If a conductor has been told of the physical infirmity of a passenger, the railroad company is chargeable with knowledge of her condition, if the conductor remembered the information; whether he did so remember, was properly left to the jury.

8. ISSUES—CHARGING JURIES.—There being no allegations in the pleadings that the wrong party was sued, there was no error in charging the jury that they were to say whether the defendant was the company that sold the ticket to plaintiff, and operated the train on which she was carried.

9. EVIDENCE—CHARGING JURIES.—In charging that the defendant must establish contributory negligence by the preponderance of the evidence, the judge did not exclude from the consideration of the jury the testimony of the plaintiff as to facts bearing on this defence.

10. CONTRIBUTORY NEGLIGENCE.—In charging: "Of course, if you think it was negligence in her not to have, under the circumstances, seen the absence of the stool, and that she was not hindered from seeing it by her skirts, as she says she was, but went recklessly along—I will not say 'recklessly,' because that implies gross negligence—but went negligently along, and took her step without making any observation at all, then she would be guilty of contributory negligence"—the judge committed no error of which defendant can complain.

11. CHARGING JURIES—FACTS.—In a law case, the judge cannot charge on the facts.

12. IBID.—There was no error in neglecting to charge a correct proposition of law, elsewhere charged to the jury.

13. PETITION FOR REHEARING refused.

Before NORTON, J., Laurens, February, 1893.

Action by Dora Madden against the Port Royal and Western

Carolina Railway Company, commenced January 21, 1891. For a former appeal in the same case, see 35 S. C., 382. The judge charged the jury as follows, portions not bearing upon the points raised by the appeal being omitted:

A railroad company is a common carrier when it undertakes to carry passengers, and if you believe the testimony of the witnesses on the stand, this railroad company had undertaken to carry passengers between the points named—that is, between Laurens Court House and High Point—and carried this plaintiff several times between those points. It was, then, the duty of the company as a common carrier, if it was a common carrier, to provide for the safe carriage of passengers, not merely to carry the passengers while they were upon its trains safely along the road between the two points, but it was its duty to provide a safe and suitable place for the plaintiff to enter the cars, and it was its duty to stop at each of the stations which it had provided for passengers to enter and leave the cars. It was its duty to stop at all of these stations, and to provide for the plaintiff here to get off safely. It was its duty to stop at this station, and to provide a means by which she might get off at this station safely.

In regard to that question of stopping and the providing a safe means of egress from its train, there are two disputes between the plaintiff and the defendant upon the law and the facts of the case. In the first place, did the train stop at the place which was provided for passengers to get on and off? The plaintiff says that it did not, that the train did not stop there. The defendant says that it did. The defendant says that the car in which the plaintiff was was stopped with its rear end over the place provided for the egress of passengers. That the front end was not stopped at that place, it admits through its counsel here, but alleges that there is a custom, or a rule, or some reason why the plaintiff should have gotten off at the rear end of the car instead of at the front end of the car. I don't recall any testimony adduced before you on that subject; there may have been such testimony. You are specially charged with the hearing, remembering, and applying of the testimony in the case. Then, has it been shown to your satisfaction that there was such

a custom as that, that the plaintiff ought to have gotten off at the rear end of the car, and that she got off, and has it been shown that she got off at the front end of the car?

The plaintiff has testified that she had been accustomed for a year (I believe it was, it is for you to say,) to go backwards and forwards between these two points. Did she get off at the end of the car at which she was accustomed to get off the car, and was her custom to get off at that end known to the conductor of the train? Was it by his invitation that she got off at that end of the car? Or do you conclude that she at that time changed her custom, and that she got off at a different end from the one at which she was accustomed to get off? Then, did the conductor know where she was accustomed to get off, and had he instructed her to get off at the other end of the car? Or did he stop the car at that time and at that place with the understanding and expectation that she would get off at the front end or at the rear end? You know, or are presumed to know, that it is the duty of a conductor when passengers need assistance in getting off of a train, to assist them off. What do you gather from his conduct on this occasion? Was he at a place where he could have assisted her off, if she had gone to the rear end of the car, or did he have an assistant at the rear end of the car to help her off? All these are questions that may help you to solve the question that we are now discussing, as to whether the train was stopped at the station at a place where the ground was prepared for the safe egress and ingress of passengers. Taking all these circumstances into consideration, do you determine that it was stopped where it ought to have been stopped? If you conclude that it was not so stopped, then you would consider whether such provision was made by the railroad company as, in its effort to carry its passengers safely and deliver them safely upon the ground and off of its premises, it was bound to do, as it would have done if it had used the care which a person of ordinary prudence, owning the railroad, would have used to provide for the safety of the passenger.

The plaintiff here alleges that the ground where she got off, and where she says she had a right to get off, was lower than the ground that was prepared for her ingress and egress, that

she got off this train at the invitation of the conductor, and that he assisted her to alight at that place. Nothing is said upon that subject, so far as I recall it, except the fact that he directed all passengers for that place to get off, and that, without any words having passed between them at the time, she alighted, he gave her his hand and assisted her to alight. Nothing was said then, so far as I recall the testimony, as to what her physical condition was, and nothing was said by the conductor to warn her of the change of location from the usual stopping place to the place where she got off; and it is for you to say whether, or not, the proper means were provided by the company, through the conductor or its other servants or agents there, for her safe egress from the train, and from the premises of the railroad company.

The plaintiff insists that it is *prima facie* negligence to carry the train beyond the usual stopping place, and alleges that not only was this badge of negligence, as she alleges it to be, present, but that it was at a rougher and more dangerous place. The plaintiff alleges further, that her condition was known to the railroad company, and it was known to this conductor, the agent of the railroad company. She alleges that it was the duty of the conductor to provide with extra care, knowing her physical condition for the past twelve months, for her egress from the train. I charge you, that if the conductor knew her condition, then it was his duty to have provided suitable means to provide against accident to her in the condition in which he knew her to be; but the conductor and the company, the defendant, denies the knowledge of the conductor, and says, that nothing being said on that particular occasion as to her physical condition, the conductor was not bound to remember it.

Well, now, I can't undertake to say to you how long a conductor ought to remember information, if he had it at all, how long he ought to have remembered that information. If it had been told him two minutes before, I suppose you would not have hesitated to have said that he ought to have remembered it. If it had been told him an hour before, you might perhaps have said that he ought to have remembered it. You have heard of the testimony upon this particular question, and it is

for you to say whether Miss Madden informed this particular conductor, because I would not hold him, as a matter of law, liable for knowledge which was given to other conductors, and, therefore, I confine your consideration of this question to the fact whether Miss Madden had informed this particular conductor of her condition, and whether, if she did, he knew it, or ought to have known it, being a man of ordinary memory and recollection, at the time that this accident occurred. If he remembered it, or ought to have remembered it, and did not take extra pains to secure her safe egress, that is, if you consider that she was in a condition to have extra pains taken for her, then the company would be liable.

The defendant, however, contends that it had the right to consider Miss Madden, the plaintiff here, as a person physically sound and well, that the doctor said he had dismissed her, and that she had no outward appearance of being sick, and that the conductor was not bound to have known that she was sick, and that if that was true, then without knowledge and considering her as well, he was only bound to provide a place of safety for the persons who were well; that is to say, if a passenger got upon his train, who was physically unwell, and did not disclose that fact either in words or by appearance, that then he was not bound to provide a place for any other kind of passenger, and that the passenger took the risk of conducting herself as a well person, and being provided for as a well person was to be provided for; and I charge you that that is good law, that unless the conductor knew, or ought to have known, of her condition, and unless her condition was really such that she needed extra care to be taken for her protection and safety, that the railroad company could not be chargeable with knowledge that she had such infirmity, and was not required to provide against such infirmity.

But the plaintiff says, although that may be the law, and although the railroad company is not chargeable with knowledge of her condition, if you should so find, yet that this place where the train stopped was a place which was an unsuitable place for any woman to get off on, and that it was not a safe place for any woman to make her egress from the

train, and from the premises of the company; and they call
your attention to the testimony of the physician and of others,
as to the height it was from the ground at that place to the
lowest step of the car, and the testimony of the physician as
to the probable effect of such egress by a woman at that place.
Those are questions of fact which you are supposed to be able
to determine.    Was the place a safe place, under the circum-
stances, for a woman who was not known to be unwell to make
her exit from the car?   Was it a dangerous place?  If it was
a dangerous place, then the defendant was guilty of negligence
in not providing a safe place.    You understand that, if the
company knew that Miss Madden was unwell at that time, it
was their duty to provide a safe place for a person in the con-
dition in which they knew her to be in.    If she was a well
woman, or her sickness was unknown to the company, it was
the duty of the company to have provided a safe place for well
women to get off the train.    But the railroad company says it
is the duty of the plaintiff not only to show that this negli-
gence occurred, but that her injury resulted from this negli-
gence.    It is for you to say whether she has shown that any
injury accrued to her person from the failure of the defendant
to perform its duty, if you should conclude that the defendant
has so failed.

And then, that question of damages to which allusion has
been made, if you should find that the plaintiff is entitled to
damages, must be according to your sound discretion from all
of the circumstances proved in the case.    I am not permitted
to give you any means of ascertaining those damages, except
to say to you that you are to be governed by all of the circum-
stances which have been proven in your hearing, using your
sound judgment, and you cannot give more damages than the
amount demanded in the complaint, which is $10,000, or, in
your discretion, you may reduce it to mere nominal damages,
even as low as one cent, if you think the circumstances would
justify you in going to the one extreme or the other.

Then, the defendant claims that it is not liable for damages
at all, because it says that the plaintiff contributed to the in-
jury; that it was her duty, knowing her physical condition,

not to have undertaken what she must have known, they say, to be a risk; that she had positive instructions from her attending physician not to get off the train without the stool, which they say implied that she was not to get off certainly at a higher place than she was accustomed to get off, where the ground was fixed for the egress and ingress of passengers, but that she ought to have been the more careful to have required the placing of the stool for her egress. In that connection there are two circumstances to be considered: First, the first consideration that I bring to your attention is, when was this injunction of the physician given? Was it at the first of her riding upon the railroad to come to see her physician, or was it afterwards; how frequently afterwards; and was it meant to apply to her condition while she was under treatment, or was it meant to apply to her condition after she was discharged from treatment? That is a question for your consideration. Then, secondly, did the plaintiff have the right to rely upon what she says was the custom of the conductor to provide her safe egress from the train, or was she bound to exercise her own judgment in making her egress?

Upon the first proposition, I am not able to help you come to a conclusion; but if you should come to the conclusion that the plaintiff felt discharged from the injunction of the physician, because she considered herself well, and for that reason made no request, then you ought to consider her well, and apply to her the principles which you would apply to a well woman in determining her negligence, or want of contributory negligence. If you should come to the conclusion that she thought that, and had informed the conductor, and was relying upon him for the safety of her egress in her present condition, then I charge you that when the conductor invited her to make the egress, and if he had been informed, and ought to have known, of her condition, and if he was accustomed to provide for her as if she were in that condition, then she had a right to rely, to a certain extent, upon his having made the provision for her as he was accustomed to do. Of course, if you think it was negligence in her not to have, under the circumstances, seen the absence of the stool, and that she was not hindered from seeing it by

her skirts, as she says she was, but went recklessly along—I will not say "recklessly," because that implies gross negligence—but went negligently along, and took her step without making any observation at all, then she would be guilty of contributory negligence; but if she had a right to rely upon the previous knowledge and conduct of the conductor, and it was not obvious to her, she was not bound to take extra pains to see that those provisions were made, and a passenger ordinarily does have a right to rely upon the fact that the egress has been made safe for him or her when the conductor directs him or her to alight.

But the defendant goes further, and says that if she was well, or not known to have been sick, then she knew the place, being accustomed to get on and off at that place, and knew that the car was not stopped at the proper place, if it was not so stopped, and that she ought to have exercised more caution in getting off. The rule of law is, that she was authorized to believe that the defendant had discharged its duty, and had provided a safe means of egress from the cars for persons who were in ordinary health, and that if she was in ordinary health, or was not known to be infirm, then that rule would apply; and it is for you to say whether the place where she got off was not so obviously unsafe as to require her to make more than ordinary observation to see to its safety, whether she was bound to use her senses when obvious danger did not appear, or whether she might rely upon the presumption that the railroad company had done its duty. In order to make out this defence of contributory negligence, it must be proved by the defendant by a preponderance of the testimony, and it must show that the plaintiff was negligent, and that her negligence was a cause, or one of the proximate causes, of the injury, as it was the duty of the plaintiff to make out her case in accordance with the law as I have charged it to you. If you find that she was negligent, or did something which a person of ordinary prudence would not have done, was not as observant as a person of ordinary prudence would have been, having the right to rely upon the presumption that the railroad company did its duty, then she was guilty of negligence; but if she did not exercise the same prudence

that a man of ordinary prudence would have exercised under the same circumstances, then she was guilty of contributory negligence.

For various reasons I refuse to charge you the defendant's 1st, 3d, 7th, 8th, 9th, 10th, and 11th requests to charge, and will submit to you requests with such modifications as I think proper to submit to you. I am requested to charge you:

"(2) If you find from the evidence that the defendant's conductor did not know that plaintiff was in delicate health, and that her infirmity was not apparent to the eye, he would be guilty of no negligence in failing to provide her with a footstool to assist her in alighting, if the place at which she alighted was a safe place for persons in ordinary physical condition, nor would he be negligent in stopping at such place." I charge you that, with this modification: if you find from the evidence that the defendant's conductor did not know, and is not chargeable with such knowledge, that plaintiff was in delicate health, etc. Being chargeable with the knowledge, means whether he ought to have remembered it from the time that he was told of it, if he had been told of it previously.

"(4) If you find that the plaintiff could, by the exercise of ordinary care, have avoided the injury, the defendant is not liable, even if you should find that the defendant was negligent." I so charge you, and I have explained that ordinary care is such care as a prudent person would have exercised under the circumstances surrounding the plaintiff at the time this accident occurred. * * *

"(18) It is incumbent on the plaintiff to show that the train from which she stepped was the train of the defendant, and was being operated by defendant company as a common carrier of passengers. If the evidence does not show affirmatively that the train was being operated and controlled by that company, then you must find for defendant." I so charge you. You are to take all the circumstances in the case, and from them, if you can, determine that this railroad company, which is the defendant and answers in this case, and admits that it is a corporation, was the company which sold the ticket to Miss Madden. You are to determine whether the company which

29—41

sold its ticket to Miss Madden operated the train, and whether it is the company which is responsible for the injury to her, if any company is responsible.

The form of your verdict will be: We find for the plaintiff so many dollars, writing it out in words, and signing your name, Mr. Foreman, and after it writing the word "foreman;" or: We find for the defendant—remembering that what the plaintiff alleges she must make out by a preponderance of the testimony, and that what the defendant alleges it must make out by a preponderance of the testimony; that is, they mutually allege negligence on the part of each other, and it is the business of the plaintiff to show the defendant's negligence, and it is the business of the defendant to show the plaintiff's negligence, if the one or the other would recover in this action.

*Messrs. Ganahl & Ganahl,* for appellant.

*Messrs. R. C. Watts, F. P. McGowan* and *H. J. Haynsworth,* contra.

July 27, 1894. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This case has been in this court before. See *Madden* v. *Railway Company,* 35 S. C., 382. When the case went back, the plaintiff was allowed to amend her complaint; and alleged as follows:

"I. That the defendant, the Port Royal and Western Carolina Railway Company, is a body politic and corporate under the laws of the State of South Carolina, and is competent to sue and be sued in this State; that it owns property and operates trains within the limits of this State. II. That said defendant is, and was at the time hereinafter stated, a common carrier of passengers thereupon for hire between the places hereinafter mentioned, to wit: Laurens Court House, South Carolina, and High Point, South Carolina. III. That on April 29, 1890, the defendant received the plaintiff into one of its passenger cars, for the purpose of carrying her therein and upon said railroad, as a passenger from Laurens Court House to High Point, in said county and State, for the sum of forty-five cents, paid to the defendant by the plaintiff. IV. That

it was the duty of the defendant, common carrier, to have a suitable stopping place at the station at High Point, and to provide a foot-stool at the steps of said car for the use of passengers alighting from said train.  V. That at the time aforesaid the defendant, in carrying the said plaintiff as passenger, negligently failed to stop its train at the usual stopping place at High Point, but stopped some distance from said usual stopping place, at a point where the distance from the steps of said train to the ground was considerable and unsafe, the said defendant well knowing that the said plaintiff was a lady in delicate health, and that it was dangerous for said plaintiff to alight from the train without the use of the foot-stool, which was not there provided for her, although it was the duty and custom of the defendant so to provide, and defendant's servants then and there instructed her to alight from said train. VI. That in consequence of the negligence of the defendant as aforesaid, and in consequence of said train stopping only a short time, the plaintiff, at said time and place, in alighting from said train to the ground (in pursuance of said instructions) a considerable distance, and in so doing was injured in her person by the displacement of her womb, and by the formation of a large abscess behind the bowels, as well as in other respects, and that her said injuries are of a permanent character.   VII. That by reason thereof, the plaintiff became for a long time ill, and was obliged to engage a skilled physician; and is still under medical treatment, and was prevented from attending to her duties, and was made sick, sore, lame, and disabled, and was otherwise injured, to her damage ten thousand dollars, &c., $10,000."

The defendant company interposed a general denial; and for "*a second defence* alleges that the plaintiff, if injured at all, was injured solely by reason of her own negligence, in that plaintiff, having full knowledge of her own physical condition, and having full knowledge of the character of the place where plaintiff alighted from the cars of defendant, and having full knowledge of the danger of so alighting, nevertheless voluntarily alighted in such place, and while in such delicate condition, without any compulsion on the part of defendant or any of its servants.

Wherefore, denying all legal damages, the defendant prays hence to be discharged," &c.

The cause came on to be heard by Judge Norton and a jury. The testimony is all in the record. The defendant made many requests to charge. The judge made a full and careful charge—*first*, on the law of the whole case, as if there had been no requests, and then second, taking up the requests, some of which he charged, others with modifications, and still others he refused—those which he had already charged, or assumed the existence of facts foreign to the case. The jury found for the plaintiff $5,000. The defendant made a motion for a new trial on the minutes of the court, which being refused, they now appeal to this court upon numerous exceptions (forty in number), alleging errors of law in charging, refusing to charge, and in statements and rulings of the court. The exceptions are not only numerous, but long and argumentative—consisting largely of extracts, detached from the contexts of the charge, and covering more than ten printed pages of the record; so that it is utterly impossible, within reasonable compass, to consider them *seriatim;* but we will endeavor to consider all the real points made, by grouping the exceptions in something like what seems to be their natural order.

It is a wholesome doctrine, and well established in this State, that in considering alleged errors in a charge, the charge must be considered *as a whole*, and not in detached portions. See *Bauskett* v. *Keitt*, 22 S. C., 187. "In examining the charge for the purpose of ascertaining its correctness in point of law, the whole scope and bearing of it must be taken together." (I hope the whole charge will appear in the report of the case.)

Exceptions 1, 2, 5, 6, 7, 15, 17, and 18, grouped in appellant's argument here as "Class I.," make objections to those parts of the charge in which, as alleged, the judge failed to represent correctly to the jury the issues to be tried by them.

(1) The court charged the jury: "She alleges the duty of the railroad company in this paragraph: 'That it was the duty of the defendant, common carriers, to have a suitable stopping place at the station at High Point,' &c. That she

alleges to be the duty of the railroad company, under the circumstances surrounding this case," &c. As we understand it, the objection to the remark of the judge was *not* that it was beyond the allegations of the complaint, but as not being in conformity with the actual case made—"in resting only on the alleged negligence in running the cars too far;" which, however, in that instance, practically made that—the running of the cars too far—the same to the plaintiff as if there had been no regular stopping place.

(2) The court charged the jury that: "The railroad company sets up as a defence, by way of counter-claim, that the plaintiff was injured by reason of her own negligence." We agree that contributory negligence does not technically constitute a "counter-claim." There can be no doubt, however, as to what the judge *meant*. He adopted it as a strong word to make it quite clear to the jury, that it was as necessary for the plaintiff to prove her claim of negligence, as it was for the company, on the other hand, to prove their allegation of contributory negligence against the plaintiff.

(3) Exceptions 5, 6, 7, 15, 17, and 18 make objection to certain remarks of the Circuit Judge, as to points "disputed" between the parties, as "admissions," "allegations," &c. But these were all explained in the settlement of the case by the judge, who, after argument before him, directed the following amendment of the case: "Admissions and allegations were made, as stated in the charge of the presiding judge. These did not, however, allude generally to formal solemn 'admissions' on the record or allegations in the pleadings, but to admissions and allegations in the argument of counsel," &c.

*Class II.* consists of exceptions alleging error in charging that certain acts will, or will not, constitute negligence, in the view that to charge the duty of a person to do a certain thing is to charge that that person would be negligent if he omitted to do so; whereas it is in the exclusive province of the jury to say what constitutes negligence, and what is the duty of a party, under all the circumstances of the case. As, for example: "Exception 4. The court charged the jury as follows: 'It was then the duty of the company, as a common car-

rier, if it was a common carrier, to provide for the safe carriage of the passengers; not merely to carry the passengers while they were on its train safely along the road between the two points. It was its duty to provide a safe and suitable place for the plaintiff to enter the cars, and it was its duty to stop at each of its stations, which it had provided for passengers to enter and leave the cars. It was its duty to stop at all these stations, and to provide for the plaintiff here to get off safely. It was its duty to stop at this station, and to provide a means by which she might get off at this station,' &c. It is submitted that it should have been left to the jury to say whether these things were duties of the company, or not." As we understand it, negligence is a mixed question of law and fact. It is for the court to say what it is, and to state, as matter of law, what are the duties of a common carrier, and then for the jury to apply the facts as proved, and say whether or not there was negligence or not. A high authority expresses the principle in this form: "The judge has to say whether any facts have been established by evidence from which negligence may be reasonably inferred; the jurors have to say whether from these facts, when submitted to them, negligence ought to be inferred. The relevancy of evidence, and whether any exists, which tends to prove, or is capable of proving, negligence, is for the court." See *Hooper* v. *Railroad Company*, 21 S. C., 549; Pierce R. R., 312, &c.

Exceptions 11 and 14 complain that the court charged: "You know, or are presumed to know, that it is the duty of· a conductor, when passengers need assistance in getting off a train, to assist them off * * * I charge you that if the conductor knew her (plaintiff's) condition, then it was his duty to have provided suitable means, to provide against accident to her, in the condition in which he knew her to be," &c. Was this error? It is urged upon us that our court has settled the identical question, in the case of *Renneker* v. *South Carolina Railway Company*, 20 S. C., 222, that there was "a common standard" for the accommodation of all railroad passengers, without regard to their physical condition, as being sick or well. By the most casual reading, it will appear that

there was not in that case any question as to knowledge on the part of the officers of the company of any infirmity of the passenger. On the former appeal in this case (35 S. C., 384,) this court held as follows, the Chief Justice speaking for the court: "While we fully endorse the rule as laid down in *Renneker* v. *Railway Company*, and recognized in the subsequent case of *Simms* v. *Railway Company*, 27 S. C., 271, as to the 'standard' by which the duty of a railroad company to provide for the security and safety of persons entering or leaving its trains, is to be tested, yet we do not see its application to a case like the present, where the allegation is not only that the infirmity of the plaintiff was well known to the defendant, but also that it was dangerous for her to alight from the train without the aid of a footstool, which was the custom of the defendant to provide, but which was not provided in this instance. The allegation of knowledge on the part of defendant was sufficient," &c. "Where the railway voluntarily accepts as a passenger one whose physical disability is apparent, or is made known to its servants, and renders special assistance necessary, the railway is negligent if such assistance be not furnished." 2 Am. & Eng. Enc. Law, 767, and notes; Pat. Ry. Acc. Law, § 278. We do not think that the charge complained of here was erroneous.

Exception 30 complains that, after charging the jury as requested by the defendant, "if the conductor did not know that plaintiff was in a delicate condition, and stopped the train in a place safe for a sound person, he would not be negligent," the court added: "If he did not know, and is not chargeable with such knowledge. Being chargeable with the knowledge means whether he ought to have remembered it from the time he was told of it, if he had been told of it previously." This was a matter entirely for the jury, and it was properly referred to them.

Exception 32. After charging the 18th request of defendant, to the effect that it was incumbent on the plaintiff to show that the train on which she was injured was being operated by the defendant company, the court added: "You are to take all the circumstances in the case, and

from them determine, if you can, that this railroad company (which is the defendant and answers in this case, and admits that it is a corporation,) was the company that sold the ticket to Miss Madden. You are to determine whether the company which sold the ticket to Miss Madden operated the train, and whether it is the company which is responsible to her, if any company is responsible," &c. There was not an intimation in the pleadings that the *wrong party* was sued. At the instance of the defendant, the whole matter was left entirely to the jury, and this court can not review their decision on the facts.

Exception 28. Because the court erred in charging the jury as follows: "In order to make out the defence of contributory negligence, it must be proved by the defendant by a preponderance of the testimony, and it must show that the plaintiff was negligent, and that her negligence was a cause, or one of the proximate causes, of the injury, as it was the duty of the plaintiff to make out her case in accordance with the law as I have charged it to you," &c. Of course, the judge did not mean that the plaintiff's negligence could not be made to appear from her own evidence, as well as from the evidence of the defendant.

Exception 24. Because the court erred in charging the jury: "Of course, if you think it was negligence in her not to have, under the circumstances, seen the absence of the stool, and that she was not hindered from seeing it by her skirts, as she says she was, but went recklessly along—I will not say 'recklessly,' because that implies gross negligence— but went negligently along, and took her step without making any observation at all, then she would be guilty of contributory negligence." We can not see that the defendant has any right to complain of this charge. Many of the other exceptions make, in different forms, the same points; some of them are too general to be considered; and even if they were not, the points raised thereby have been considered and disposed of in other portions of this opinion.

The Circuit Judge did not charge the requests of the defendant numbered 1, 3, 5, 7, 8, 9, 12, and 13, which are all printed in full in the record, and need not be again stated here.

Upon examination it will be seen that they relate to matters of fact, and that it would have been manifest error to have charged them. It appears in the case that the judge intended to charge the "request No. 5," and had so marked it; but in the confusion produced by such a multitude of papers, it was overlooked, and not given to the jury. This oversight, however, was entirely harmless to the defendant. The request was in these very familiar words: "Ordinary care is that degree of care which prudent persons use in the conduct of their own affairs;" and this very common definition of ordinary care, almost in the indentical words with the request, was announced more than once in the course of the previous charge. "It is not error to refuse abstract propositions of law, already covered by the charge." See *Washington &c. R. R. Co.* v. *McDade*, 135 U. S., 554.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

In this case the defendant filed a petition for a rehearing, alleging error in the ruling of this court on its exceptions numbered 11, 34, 36, 37, 38, and 39. Upon this order the Chief Justice and Mr. Justice Pope (Mr. Justice McGowan's term of office having expired) endorsed an order September 14, 1894, in the same words as in the case of *Anderson* v. *Pilgram*, *ante*, 440.