## KENNEDY v. SOUTHERN RY. CO.

PLEADINGS—GENERAL DENIAL—NEGLIGENCE.—In suit for damages to person by negligence of railroad company, under general denial defendant may show that injury was caused *alone* by negligence of plaintiff. MR. JUSTICE GARY *dissents.*

Before GAGE, J., Aiken, winter term, 1900. Reversed.

Action for damages for personal injuries caused by negligence of defendant, by John T. Kennedy against Southern Railway Company. From judgment for plaintiff, defendant appeals. The Judge charged the jury as follows:

"This is an action by John T. Kennedy against the Southern Railway Company for damages. Before I proceed to deliver to you my view of the law of this case, I will pass upon the requests to charge which both parties have made, and that means this: that Mr. Kennedy, who brings this action, or rather his counsel, have views about the law which governs this case and ask me to state that law, and the Southern Railway Company, or their counsel, have views which they ask me to present; and if I fail to state the law correctly, and in the manner which they present, they have a remedy by appeal to the Supreme Court, and if I fail to present the law correctly, the Supreme Court will send the case back for another trial before another Judge and another jury, which all means that a lawsuit is not ended until it is ended right. Now, the plaintiff has this view of the law generally. 'I. That negligence is the omission to do something which a reasonable and prudent man, guided by those considerations which ordinarily regulate the conduct of affairs, would do, or doing something which a reasonable man would not do under all the circumstances surrounding and characterizing the particular case. And the jury in this case, taking this as the definition of negligence, is to find from the facts and circumstances surrounding the transaction in question, whether or not the defendant company has committed negligence; and if they so find, and further find that plaintiff was injured thereby, then the verdict should be for plaintiff. II. A passenger who has paid his fare is entitled to be carried safely to the place of his destination—that is, the place to which he has paid his fare, and must be furnished at said place safe means of exit and landing; and if the train is stopped, and he is directed by the agents in charge of the train to get out at said place, he has the right to rely on their direction, and can presume that the place is safe for his exit, unless the danger thereof is open and apparent to him. III. If the jury finds the plaintiff is entitled to recover, they are authorized to give him damages up to the amount claimed in the complaint for all injuries he has received, that they may

find he has received; also for all pain and suffering, mental or physical, that they may find he has experienced from such injuries. And if he is permanently injured, they may take that into consideration, and also all expenses he may have been at or is liable for because of such injuries as he may have received from the negligence of the defendant. IV. Contributory negligence—that is, negligence by the plaintiff to defeat his recovery—is a matter of affirmative defense, and if not pleaded in the answer cannot be proven or avail the defendant. In the answer in this case it is not pleaded, and cannot be considered by the jury.' All of those requests, gentlemen, are right.

"These are the requests of the defendant, the railroad company, requests me to make: 'I. While the law holds a railway company to the highest degree of care as to its cars, appliances and railroad track, in carrying their passengers, and they would be liable for the slightest negligence in that respect, they are not held to such degree of care as to their station or its appliances. The degree of care that a railway company is bound to exercise as to its platform and approaches is only ordinary care; hence, if the jury find in this case that the defendant has exercised ordinary care as to the safety of the place selected for passengers to alight from their cars, and that such place was reasonably safe, and such a place that a person of ordinary care and prudence would have used, that the defendant would not be liable, and the verdict should be in its favor. II. If the jury find from the evidence that the plaintiff had taken passage on the defendant's car, and had been safely carried to his place of destination, and there alighted in safety from the defendant's car, and had left the defendant's railway track before receiving the injuries complained of, the defendant under such circumstances (and I add under the pleadings in this case) would not be liable. III. If the jury believe from the evidence that the plaintiff alighted from defendant's car at the place described in the complaint, but that the place where plaintiff alighted was, considering the circumstances, a suitable place,

and a place of reasonable safety for passengers to alight, and such as a person of ordinary care might select for such purpose, then the defendant would have discharged its duty under the law, and could not, under the pleadings of this case, be held liable to the plaintiff for injury, accidentally occurring to the plaintiff, while attempting to pass to the car on the connecting road.' All of those propositions are correct. I have made some interlineations, Mr. Stenographer, in the second and third, which will indicate my changes.

. "The fourth request I cannot charge, for this reason, in my judgment, it raises an issue not raised by the pleadings—that is to say, if the plaintiff, John T. Kennedy, was negligent on that night or not, if the railroad company was negligent, then it makes no difference if the plaintiff was negligent or not, because the answer hasn't pleaded he was negligent. If the railroad company was not negligent, it makes no difference if the plaintiff was negligent or not, it would not be relevant. Before the plaintiff comes into Court, the man who brings the action is called the plaintiff, he goes to his lawyer and he puts in black and white on paper what complaint he has—what complaints he has against the railroad company; states specifically what happened, when it happened, and where it happened—that's called the complaint; then that is given the railroad company, and their lawyer puts down on a piece of paper their answer to it, and that's called the answer; when their witnesses come into Court they must swear what's in those papers, because that's what they have said was their case, and nothing else, they have advertised what they are going to prove, and the witnesses must swear to those things and those things alone. Now, Mr. Kennedy has charged what? Mr. Kennedy says, and I speak of the complaint, not what he said on the stand. Mr. Kennedy says he bought a ticket in Columbia to Batesburg and paid his money for it, and before they got to Batesburg, to wit: at a junction some distance north, the train stopped and he was invited to get out, and in getting out there was no safe place for him to get out, alight, and he fell

and was injured. The railroad company denies that; that raises these issues for you: first, did the railroad company furnish him with a safe place to alight, that's an issue of fact for you; the second is: was he injured thereby; the third is, how much was he injured, if he was injured at all? What was the relationship between them? Railroads sustain manifold relationships to the public: when they carry men on their cars, they sustain one relationship; when you cross their track in front of their engine, they sustain another relationship; hauling freight over their road, they sustain another relationship—with all those we have nothing to do. The question is, was the place where the plaintiff alighted a safe and suitable place for passengers to alight, and was he injured by the negligence of the railroad company—those are the questions in this case. Now, I charge you that it is the duty of a railroad company, when it undertakes to carry passengers for hire, to take him in at a safe place and set him down at a safe place. Now, how safe a place? I charge you, gentlemen, that while the car is rolling along its track at a frightful rate of speed, under the impulse of steam power, the railroad company owes the greatest degree of care to its passengers, because the peril is very great, and the law imposes upon the railroad company the greatest degree of care. Does the law impose the same degree of care to furnish a place for passengers to get out? I charge you that it does not. There is no case in our books that decides the point; the only case is the case Mr. Henderson cites, divided between three Judges; therefore, I have to split the road and do the best I can. In my judgment, the excellence of the law consists in its reasonableness, and in enforcing it. Now, how much care must be exercised in furnishing a place for passengers to alight? I charge you that they must use ordinary care, such care as a man of ordinary care, foresight and understanding, such a safe place as a man of ordinary care and foresight would furnish, or ought to furnish, under like circumstances. I don't know those elements. You must; you have got to fix in your mind the standard of right

doing—so it comes down to a question for the jury at last. I tell you, the railroad company is bound to furnish Mr. Kennedy with a reasonably safe place to alight from that train. And the question comes to your mind : was it a safe place to alight? That's a question you will have to solve. If it was a safe place, the railroad company is not liable. If it was not a safe place, the railroad company is liable. That is the first question for you to determine. The second issue is, was Mr. Kennedy hurt by the railroad company failing to furnish a safe place to alight. from their train? Has the railroad company failed to furnish such a place to alight? And was the plaintiff, Mr. Kennedy, hurt, injured, in consequence thereof? The charge in this complaint is that the negligence in the railroad company consisted in not having a safe place to get out on; and that's the only issue in this case. Now, was Mr. Kennedy hurt as a result of the railroad company not having that place, then and there, at that spot? If he was, then the railroad company is liable, and must pay such damages as you assess. I charge you furthermore, in this case it is not charged and is not pretended that the people who had charge of that train on that morning did anything, or omitted to do anything, that they ought to have done. The sole contest is whether the place they put Mr. Kennedy out on was a safe place. I charge, you cannot consider whether or not Mr. Kennedy acted with ordinary care, because when the railroad company put in their answer they didn't advise him that they were going to prove that this thing occurred by his negligence, and not by the negligence of the railroad company; therefore, they can offer no testimony to show that he was negligent. The sole question is whether the railroad company was negligent. If you conclude that was not a safe place to get out, and if you conclude Mr. Kennedy was thereby injured, and if you conclude he was injured thereby, then you are to say how much. Upon those questions I cannot help you. You have heard the testimony of the expert, you have heard the testimony of Mr. Kennedy himself. Nobody stated any figures. It is not

worth while to state any figures, it is a matter for you, for the jury, to estimate. Now, one more matter and I am done. This is a civil case; that side which has the preponderance of evidence, that carries the most conviction to your minds, is the side entitled to the verdict. You have the testimony, the burden is upon you to decide; and it is a difficult burden. I don't envy you of it. I am glad the Constitution of the country has put it upon the juries the determination of questions of fact. I have stated the law, you must find the facts, and when you find it, write your verdict upon the back of this summons, and sign your name as foreman. If you find a verdict for the plaintiff, state how much, writing it out in letters; if you find a verdict for the defendant, say, we find for the defendant, and in either case sign it as foreman. Take the record and retire."

(The requests refused are as follows:) "IV. That if the jury believe from the evidence that the plaintiff, John Kennedy, might have avoided the injury complained of by ordinary attention to his own safety, then the company would not be liable in damages for his injuries, if any. V. If the jury believe that the plaintiff knew that the defendant's train of cars at the time of his exit were stopping at an unusual stopping place, and that he might have avoided the injury by the exercise of ordinary attention to his own safety, then the company would not be liable in damages, if he failed to exercise such care and attention."

The defendant appeals on following exceptions:

"1. Because his Honor, the Circuit Judge, charged the jury: 'If the plaintiff, John T. Kennedy, was negligent on that night or not, if the railroad company was negligent, then it makes no difference if the plaintiff was negligent or not, because the answer has not pleaded he was negligent.' In this it is submitted the Circuit Judge erred; for it forbid the jury to consider the negligence of the plaintiff, which might have been the sole cause of the injury to him; not-

withstanding the defendants might have also been negligent, and it was proper that such defense should be considered under the general denial.

"2. The defendant's fourth request was as follows: 'That if the jury believe from the evidence that the plaintiff, John T. Kennedy, might have avoided the injury complained of by ordinary care and attention to his own safety, then the company would not be liable in damages for his injury, if any.' His Honor, the Circuit Judge, refused to charge such request. In this it is submitted he erred, for under the general denial, the defendants might show that plaintiff's negligence is the sole cause of the injury.

"3. The defendant's fifth request was as follows: 'If the jury believed that the plaintiff knew that the defendant's train of cars, at the time of his exit, were stopping at an unusual stopping place, and that he might have avoided the injury by the exercise of ordinary attention to his own safety, then the company would not be liable in damages, if he failed to exercise such care and attention.' It is submitted under the general denial, the defendant might show that the want of ordinary care on the part of the plaintiff was the sole cause of injury, and that the negligence of the defendants did not cause such injury; and hence, his Honor, the Circuit Judge, erred in not so. charging, and in refusing to 'charge the defendant's fifth request."

*Messrs. B. L. Abney* and *G. W. Croft & Son,* for appellant. The latter cite: *If injury was caused by negligence of plaintiff alone, defendant can show it under general denial:* 18 Barb., 29; 16 Barb., 633; 4 ed. Smith, 172; 31 Barb., 534; 38 N. Y., 263; 38 Barb., 653; 14 Abb. Pr. N. S., 371; 5 Lans., 287; 62 Barb., 131; 11 Colo., 1; 36 Hun., 367; 20 Abb. N. Cas., 316; 15 N. Y., Kkly. Dig., 290; 4 ed. Smith, 171; 13 Cal., 640; 18 Barb., 29; 57 N. Y., 651; 38 S. C., 529.

*Messrs. Hendersons,* contra, cite: *Judge did not charge*

*jury that if injury was caused alone by negligence of plaintiff, still he could recover; under general denial defendant not entitled to have the jury to consider the negligence of plaintiff as a defense:* Code, 170; 56 S. C., 91; 38 S. C., 543; 57 S. C., 210; 22 S., 171.

March 19, 1901. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. By reason of the death of the stenographer who took down the testimony in this case, the same could not be set out in the "Case," and, therefore, we know nothing of it except what may appear in the Judge's charge, which, with the exceptions, should be incorporated by the Reporter in his report of the case, as they will sufficiently show what points are presented for our consideration; and, therefore, we need not undertake to set out here in detail the allegations in the pleadings or the exceptions to the charge. It is sufficient to say that the object of the action was to recover damages for injuries alleged to have been sustained by the plaintiff by reason of the negligence of defendant in failing to provide a safe place for him to alight from the train, when it reached the point at which he desired to leave the train; and that the only defense set up in the answer was a denial of each and every allegation in the complaint.

It seems to us that the only question presented by this appeal is whether there was any error on the part of the Circuit Judge in instructing the jury that, under a general denial, and in the absence of any plea of contributory negligence, they could not consider whether the plaintiff's negligence was the sole cause of the injury of which he complains. In other words, the question is whether the defendant, under a general denial, may controvert the allegation that the plaintiff's injuries were caused by the defendant's negligence, by showing that they were, in fact, caused by the plaintiff's own negligence, or that of some third person, and, therefore, were not caused by the defendant's negligence. It seems to

us that both reason and authority require us to answer this
question in the affirmative.   If a person is charged with
having caused an injury to another by reason of his negli-
gence, surely it is both reasonable and logical for him to say,
"I deny the charge, and support such denial by showing that
the injury complained of was caused by the negligence of
the party injured, or that of some other person, and, there-
fore, I am not the cause of the injury complained of."   If a
person is charged with taking the life of another, it is cer-
tainly competent for him to deny the charge, and sustain
such denial by showing that the party took his own life, or
that his death resulted from some other agency, for which
the party charged was not responsible.   Indeed, this seems
to us to be the strongest form of denial, for if it is shown
that the act or omission complained of was the result of
some other agency than the act of the party charged, then it
is shown that he, not only did not do the act, but that it was
impossible that he could have done it.   But without pur-
suing the argument further, we will proceed to show that the
authorities sustain this view of it.   In 1 Encycl. of Plead. &
Prac., in note 2, page 824, cited by counsel for appellant, it
is said, "under a general denial, the fact that the injury was
caused by the negligence of others, may be shown;" and
quite an array of cases from other States are cited to sustain
this proposition.   But we have a recent case in our State,
which, in principle, sustains our view—*Wilson* v. *Railway*,
51 S. C., 79—in which Mr. Justice Gary, in delivering the
opinion of the Court, uses this language: "The first question
raised by the exceptions is, 'was there error on the part of the
presiding Judge in excluding testimony offered in behalf of
the defendant, for the purpose of showing that the injury
was caused by the negligence of a fellow-servant, on the
ground that it referred to the defense of co-employee, which
could not be raised under the pleadings.' "   And after pro-
ceeding to state the allegations of the complaint, and show-
ing that the testimony was competent for another reason,
proceeds to say: "but it was also competent for the purpose

of showing a failure of negligence on the part of the defendant by establishing the fact that the injury was caused by the negligence of a fellow-servant;" and he proceeds to sustain that proposition by quoting from sec. 671 of Pom. on Remedies—that standard authority on the Code—the following: "Evidence which is, in its nature, affirmative, is often confounded with defenses which are essentially affirmative and in avoidance of the plaintiff's cause of action, and is, therefore, mistakenly regarded as new matter requiring to be specially pleaded, although its effect upon the issue is strictly negative, and it is entirely admissible under an answer of denial. In other words, in order that evidence may be proved (admitted?) under a denial, it need not be, in its nature, negative; affirmative evidence may often be used to contradict an allegation of the complaint, and may, therefore, be proved to maintain the negative issue raised by the defendant's denial. One or two familiar examples will sufficiently illustrate the proposition. In certain actions, property in the plaintiff, in respect to the goods which are the subject matter of the controversy, is an essential element of his claim. His complaint, therefore, avers property in himself; the allegation is material, and is, of course, put in issue by the general or specific denial * * * The defendant may controvert this fact in two modes. He may strictly contradict, and destroy the effect of the plaintiff's proof, and in this purely negative manner procure, if possible, a decision in his own favor upon this issue. * * * On the other hand, the defendant not attempting *directly* to deny the testimony of the plaintiff's witnesses, and to overpower its effect by *direct* contradictory proof, may introduce evidence tending to show that the property in the goods is, in fact, in a third person. This evidence, if convincing, would defeat the plaintiff's recovery. It would be affirmative in its *direct* nature; but its ultimate effect in the trial of the issue raised by the answer would be to deny the truth of the plaintiff's averment. Such evidence, although immediately affirmative, would still, for the purpose of determining the

35—59

issue presented by the pleadings, be negative." This is immediately followed by a quotation from sec. 675 of the same valuable work, which seems to be directly applicable to the question we are considering, in these words: "In actions for injuries to person or property, alleged to have resulted from the defendant's negligence, he may prove under a general denial, that the wrong was caused by the negligence of third persons, not agents of the defendant, and for whom he was not responsible." Further on in his opinion, at page 95, his Honor, Judge Gary, clearly points out the distinction between the well settled rule (in this State, at least), that where a party desires to avail himself of the defense of *contributory* negligence, he must set up such defense in his answer, in order to entitle him to offer evidence to sustain such defense, and he gives the reason for such distinction in the following language: "The reason why testimony is admissible, under a general denial, to prove that the injury was caused by the negligence of a fellow-servant, is because its tendency is to show that there was no negligence whatever on the part of the defendant. On the other hand, the reason why it is necessary to set forth in the answer the defense of contributory negligence on the part of the plaintiff, is because testimony showing such contributory negligence does not disprove the allegations of the complaint that the injury was caused by the negligence of the defendant. The defendant, by setting up in his answer the defense of contributory negligence on the part of the plaintiff, does not attempt to escape liability by showing a failure of negligence on his part, but because the plaintiff has done that which prevents a recovery against him, although he, the defendant, may have been guilty of negligence. Such facts would constitute an *affirmative defense* of which the defendant could not get the benefit, unless it was set up in the answer. The exceptions raising the first question are sustained." Indeed, we may add, that the defense of *contributory* negligence, so far from tending to deny or disprove negligence on the part of the defendant, necessarily involves, by the very meaning of the

term "contributory," an admission of defendant's negligence, but the plaintiff's negligence combining and concurring with the negligence of defendant, as a proximate cause thereof, has produced the injury complained of.    See 7 Am. & Eng. Ency. of Law (2d edit.), at page 371.    *Cooper* v. *Railway Co.,* 56 S. C., 91 ; *Bowen* v. *Railway Co.,* 58 S. C., 222 ; *Sims* v. *Railway Co.,* 26 S. C., at page 490.

Now, in this case, it is quite certain that the defendant company not only did not, by its answer, either expressly or impliedly (by setting up the defense of contributory negligence), admit its own negligence, but on the contrary, expressly denied any negligence on its part; and, therefore, under the authority of the case of Wilson, above cited, had the right to offer evidence tending to show that the injuries complained of by plaintiff were due to his own negligence, and thus disprove the allegation that such injuries were due to the negligence of the defendant.    If it should be said that Wilson's case does not apply, because in that case the question arose as to the competency of the evidence, while here it does not appear that any such question was raised, the answer is obvious.    While it is true that, owing to the unfortunate death of the stenographer, his notes of the testimony, and what occurred while it was being developed, could not be obtained, and is not, therefore, set out in the "Case," yet there is enough in the charge of the Circuit Judge to warrant the inference that such testimony was offered and rejected.    For some of the language used by the Circuit Judge in his charge would have been absolutely meaningless, unless such testimony had been offered, and this our great respect for the intelligence and fairness of the Circuit Judge would absolutely forbid us to assume.    The following language was used by the Circuit Judge in his charge to the jury : "I charge you, furthermore, in this case it is not charged and is not pretended that the people who had charge of that train on that morning did anything, or omitted to do anything, that they ought to have done.    The sole contest is whether the place they put Mr. Kennedy out on

was a safe place.    I charge, *you cannot consider whether or
not Mr. Kennedy acted with ordinary care, because when the
railroad company put in their answer they did not advise him
that they were going to prove that this thing occurred by his
negligence, and not by the negligence of the railroad com-
pany; therefore, they can offer no testimony to show that he
was negligent."*    It seems to us that the language of the
Circuit Judge, which we have italicized, clearly implies that
the defendant did offer testimony tending to show the negli-
gence of the plaintiff.    What else could the statement that
the defendant company, for the reason given, "can offer no
testimony to show that he (meaning the plaintiff) was negli-
gent," mean?    But even if it be assumed that no such testi-
mony was offered *by the defendant,* still we think there was
error on the part of the Circuit Judge, in refusing the de-
fendant's fourth and fifth requests to charge, under the prin-
ciples established by Wilson's case, *supra.*    It is true, that
the "Case" does not show that the Circuit Judge, *in express
terms,* refused to charge defendant's fifth request, but he cer-
tainly did not charge that request, for he said nothing about
it; and as the whole tenor of his charge was in direct con-
flict with that request, it must be regarded as having been
refused.    If, as held in Wilson's case, it was competent for
the defendant to offer testimony, under a general denial,
tending to show that the plaintiff's injuries were caused by
his own negligence, and in that way sustain its denial of the
allegation that the negligence of the defendant caused plain-
tiff's injuries, then clearly, upon the same principle, it was
not only the right but the duty of the jury to consider the
question whether the negligence of the plaintiff caused his
injury.    If so, then unquestionably, there was error in in-
structing the jury that they could not consider any such
question.    Even if there was no testimony adduced *by the
defendant,* tending to show that plaintiff's injuries were
caused by his own negligence, yet there may have been in the
testimony adduced by the plaintiff facts and circumstances
tending to show negligence on his part; and, as we have said

above, there must have been some such testimony in the case, for otherwise the manifest effort of the Circuit Judge to impress upon the jury the idea that, under the pleadings in this case, they could not consider such testimony, would have been worse than idle.    It seems to us clear that this case has been tried by the jury under erroneous instructions as to the law applicable to it, and that the exceptions to the charge must be sustained.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

Mr. Justice Gary *dissents.*