SHEALEY v. SOUTH CAR. & GA. RY. CO.

1. Evidence—Custom—Railroads.—It is proper for a witness to state a custom within his knowledge of a railroad company of destroying ticket stubs after sixty days.

2. Railroads—Passengers—Stations.—It is duty of agents of a railroad to stop its trains at regular stations long enough for passengers to alight and enter, but it is not its duty after that time to ascertain if there is still a passenger there about to alight.

3. Negligence—Contributory Negligence.—Instruction that if de-

fendant was negligent, and plaintiff was negligent, too, "and these two acts of negligence moving together brought about the disaster," is not an erroneous statement of the doctrine of contributory negligence.

Before GAGE, J., Aiken, January, 1903. Affirmed.

Action by Bennett Shealey against South Carolina and Georgia Railway Co. From judgment for defendant, plaintiff appeals.

*Messrs. Croft & Lamb,* for appellants, cite: *As to proof of customs:* Green on Ev., secs. 99, 137, 138, 149, 252. *Duty of conductor to passengers alighting:* Hutch. on Car., 726; 13 L. R. A., 97. *As to charge on contributory negligence:* 61 S. C., 353; 55 S. C., 397.

*Messrs. Jos. W. Barnwell, B. L. Abney* and *Hendersons,* contra. The latter cite: *As to proof of customs:* 11 Ency., 2 ed., 504, 512; 38 S. C., 199, 235; 27 Ency., 700. *As to duty of conductor to alighting passengers:* Ell. on R. R., sec. 1628; 4 Am. St. R., 378; 11 Am. & Eng. R. R. Cas., 136; 27 S. C., 268; 46 S. C., 203; 20 S. C., 219. *As to charge on contributory negligence:* 61 S. C., 468; 62 S. C., 141.

July 8, 1903. The opinion of the Court was delivered by

MR. JUSTICE JONES. In this action plaintiff sought to recover damages for personal injuries alleged to have been sustained by him while a passenger on defendant's train at Langley, S. C., August 3, 1900, through the negligence of defendant, alleged to consist in: (1) failing to stop the train at Langley station for a time sufficient to allow plaintiff to alight therefrom; (2) suddenly causing the train to move forward with a jerk while he was on the steps of the passenger coach for the purpose of alighting, thereby bruising, twisting and straining his right ankle. The jury rendered a verdict in favor of the defendant, and from the judgment thereon plaintiff has appealed.

The first exception alleges error in allowing the witness, H. W. Colson, to testify that it was the custom or practice of the defendant company to destroy all ticket stubs after sixty days. One of the issues being as to the length of time the train stopped at Langley, the defendant, besides offering direct testimony on that point by the conductor and others, sought to show stoppage for a reasonable time by offering testimony as to the number of cash fares and tickets taken up by the conductor to and from Langley on that train, and that time was sufficient to allow such other passengers opportunity to get off and on. No one had called for the production of the original tickets or the stub book; but, nevertheless, defendant sought to explain their absence by showing the practice of the defendant company to destroy them after a certain time. On this point the only ruling made by the Court was, that "if the witness knows what the practice is, he can testify to it;" and in response to the question, the witness answered that the practice is to destroy the tickets and stub books after sixty days. Under the Court's ruling, the testimony of the witness as to such practice was limited to the witness' knowledge, and error cannot be imputed to such ruling because it afterwards developed on cross-examination that the witness' *knowledge* was derived from what the custodian of the tickets told him as to the practice. No motion to strike out the testimony as hearsay was made. This exception is overruled.

The second and third exceptions impute error in not charging plaintiff's third and fourth requests to charge, which are as follows:

"3. The jury is further charged, that the mere fact that the conductor of a train stopped the cars a reasonable length of time for passengers to alight therefrom, will not be always sufficient to exonerate the company from damages for an injury sustained by a passenger while alighting by reason of the train starting off. The railroad company must go further, and satisfy the jury that they used reasonable care, before starting its train, to ascertain that no

passenger was in the act of alighting or in a position that would be perilous if the train started.

"4. It is the duty of a railroad company to stop its trains at stations a reasonable time, sufficient for its passengers exercising reasonable diligence to alight from its cars in safety, and it is likewise their duty before starting its train of cars again, to exercise reasonable care to ascertain that no passenger is in the act of alighting or in a position that is perilous, if the train should start. And you are further charged, that if a conductor in charge of a train starts it off after waiting a reasonable length of time, whereby a passenger is injured while in the act of alighting, the company will still be liable in damages, if the conductor, by exercise of reasonable care, could have known that a passenger was in the act of alighting, but failed to do so."

The defendant also presented a request to charge in that connection in these words: "1st. That the duty which the conductor of a railway train owes to a passenger who desires to get off at a given station upon his arrival there, is to announce the station and stop his train for a sufficient length of time to allow passengers on the train to disembark, and those who desire to get on the train to do so, and the question of what is a sufficient length of time is one for the jury to pass on. The conductor is not bound to see that the passengers desiring to disembark at the particular station at which the train has stopped have in fact gotten off; but after waiting a sufficient length of time to afford them an opportunity to get off, he may presume that they have done so, and then, unless he sees some one in the act of getting on or off or in some perilous position, he may signal his train and go ahead on his journey."

The Court charged the following in substitution of plaintiff's third and fourth request and defendant's first request:

"A railroad company engaged in carrying passengers for hire is held to the exercise of the highest degree of care in that business. The carriage extends from the incipient reception of the passenger on the cars to his disembarkation

therefrom on the place provided for his reception. The jury must fix the standard of the highest degree of care, and inquire if the railroad company came up to it, or fell short of it. The statute law requires the company shall cause its trains to entirely stop at a station 'for a time sufficient to let off passengers.' Sec. 2134. What is a sufficient time, is a question for the jury under all the circumstances of each case. When the train stops, what must the conductor do, if anything, to secure the disembarkation of passengers? He must stop a time sufficient to let them off, the statute law so declares; but it would be an assumption of your powers by me to charge you he should or not look to see if the passengers have disembarked, or to charge you he should do any other specific act. The jury must take into consideration the speed of trains, the distance traversed, the number of the stops, the crowds carried, the habits of men, and inquire if under all the circumstances there present the conductor exercised the highest degree of care in the particular case; if he did, the company is absolved from liability; if he did not, the company is liable if such shortcoming was one of the proximate causes of an injury to a passenger."

By this charge the jury were substantially instructed: 1. That it is the duty of a railroad company to stop the train for a sufficient time to allow passengers to disembark. 2. That the jury must determine whether the time allowed was sufficient from all the circumstances. 3. That the law requires of a railroad company the highest degree of care in view of all the circumstances to avoid danger to a disembarking passenger, and that if defendant failed to exercise such care, and such failure was the proximate cause of plaintiff's injury, the defendant was liable. This charge, we think, correctly stated the principles of law applicable, leaving it to the jury to determine from all the circumstances whether the defendant was negligent, without suggestion from the Court as to what fact would constitute negligence. After the railroad carrier has discharged the duty of stopping the train for a reasonable time to allow the passengers to alight therefrom,

5—67

the conductor may fairly assume that passengers have with reasonable diligence availed themselves of the opportunity afforded to alight, and may signal the train forward. unless he has knowledge that a dilatory passenger, or one impeded in movement by physical infirmity or otherwise, is about to alight, or is in some position which would be perilous in the event of starting the train. The law, however, does not impose upon the railroad carrier, after reasonable opportunity for passengers to alight has been afforded, the further duty to *ascertain,* to *know,* whether a passenger. is in the act of alighting, or on the platform of the coach for that purpose.

The testimony in this case tended to show that the train consisted of two passenger coaches; that when the train stopped at the station, the conductor stood on the platform between the coaches and the assisting brakeman got on the ground; that several passengers got on and off; that from his position the conductor, after looking through the coach and leaning out from the platform, did not see plaintiff, nor did the brakemen see him from his position on the ground near the coach steps; that the brakeman reported to conductor, "All right," and the conductor called "Board," and signalled the train forward. The plaintiff testified that he had been seated near the rear end of the last coach; that immediately after the train stopped he started to alight from the rear platform; that while on the platform, on the first step going down, the train started forward with a jerk, which strained and injured his ankle; that at his request a person standing on the platform pulled the stop-cord, and that when the train stopped again he alighted. Thus, doubtless, the plaintiff at the time the train started forward was concealed from view of both the conductor and assistant. Under these circumstances, to have charged plaintiff's request, would have been tantamount to instructing the jury that after stopping a reasonable time it was further the duty of the carrier's agent before moving the train, to be careful to ascertain whether a passenger was in the act of alighting or in a perilous position, by inspecting the platforms of the coaches, or doing some

other act reasonably necessary to ascertain or know whether a passenger is about to disembark. We do not think the law imposes such a duty. If the peculiar circumstances were such as to call for such extraordinary precautions, the charge fully met the issue by imposing upon the defendant the duty of exercising the highest degree of care under the circumstances. The foregoing views are supported by the following authorities: 5 Ency. of Law, 2 ed., 578; *Raben v. Central Iowa Ry. Co.,* 73 Iowa, 579; 5 Am. St. Rep., 708; *Hunt v. St. Louis etc. R. Co.,* 5 Am. Rep. St., 708; *Hunt v. St. Louis etc. Ry. Co.,* 94 Mo., 255; 4 Am. St. Rep., 374. The case of *Highland Avenue & Belt R. Co.* v. *Burt,* 92 Ala., 291, 13 L. R. A., 95, cited by appellant, relates directly to the rule of care to be exercised by the conductor on a train drawn by a dummy engine with no regular stopping place; but the same case thus states the rule in Alabama, as applied to ordinary railroads: "When a train of an ordinary railroad is brought to a standstill at the proper and usual place for receiving passengers and for permitting passengers to alight, and remains stationary for a reasonably sufficient length of time for this purpose, the duty of the trainmen in this regard has been performed; but while the performance of this duty may relieve the trainmen from any further duty of seeing and knowing that the passengers are on or off, as the case may be, even this would not excuse from culpability, if those in charge of the train, in fact, saw or knew that its movement would probably imperil a passenger in the act of getting off or on the train, and in disregard of the peril, caused the train to move, and thereby inflict injury."

Appellant further excepts as follows:

"Fourth. Because his Honor erred in charging, 'that no matter if the railroad company was negligent, if Shealey was negligent, too, and those two acts of negligence moving together brought about the disaster,' the plaintiff could not recover. For his Honor erred in stating the law of contributory negligence, for he should have charged, that in order for the railroad company to be exoner-

ated from liability, the negligence of the plaintiff must com-
bine and concur with the negligence of the defendant and
contribute to the injury as a proximate cause, without which
the injury would not have occurred."

In this connection the Court charged the jury: "Now, the
carelessness alleged there against Mr. Shealey is what is
called the lack of care; and I charge you if in the respects
charged he was guilty; if he did those things, and if in your
judgment that was a lack of ordinary care, then, no matter
if the railroad company was negligent, if Shealey was neg-
ligent, too, and those two acts of negligence moving together
brought about the disaster, then the law leaves them where it
found them.   In other words, a disaster may be the result
of one or many causes; in this case, I charge you that if it
was the result of two causes, one being the negligence of the
railroad and the other being the negligence of Mr. Shealey
himself, and those two operating together brought about the
disaster, then the law leaves them where it found them."

We think the Court substantially charged in accordance
with the law as contended for by appellant.   In order to con-
stitute contributory negligence, the injured person's negli-
gence must directly and proximately cause the injury, com-
bining and concurring with the negligence of the injured
party.   *Bodie* v. *Ry. Co.,* 61 S. C., 486.   A proximate cause
is one which operates immediately, not remotely, and is
active and efficient in producing the injury.   If plaintiff was
negligent, and that negligence, *moving and operating,
brought about* the disaster, the natural inference would be
that such negligence was an active, efficient and immediate
cause of the disaster, and if such negligence *moved together,
operated together* with defendant's negligence, the necessary
inference would be that plaintiff's negligence combined and
concurred with defendant's negligence in causing the disas-
ter.   Furthermore, by reference to other portions of the
charge, it will be seen that the jury were instructed that
defendant was liable if its negligence was a proximate cause
of the injury, and the Court further charged as follows:

"6th. That the jury must not undertake to apportion which was the more negligent, the plaintiff, Shealey, or the defendant company; but they must find for the defendant company, if they find either that the company was not negligent at all, or if they find that both the company and the plaintiff, Shealey, were negligent; provided, they find that such negligence of the plaintiff, Shealey, was one of the proximate or immediate causes of the accident."

Appellant's last assignment of error is as follows : "Fifth. Because his Honor erred in charging the defendant's fourth request (4-a), which is as follows : 'Even if the jury finds that the plaintiff was injured by attempting to get off of the train in question, yet if they further find that he was not injured by the negligence of the defendant company or its agents, he cannot recover, because there can be no recovery against the defendant unless there is proven to have been negligence on the part of the defendant and that said negligence injured the plaintiff.' For it is respectfully submitted that it is not a correct or full statement of the law and is misleading. His Honor should have further charged in connection therewith, that in order to exempt the railroad company from liability, the jury should find that the negligence of the defendant did not operate as a proximate or one of the proximate causes of the injury." We see no error in the charge.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.