### 7689

### GUE v. WILSON.

1. AUTOMOBILES—NEGLIGENCE—WILFULNESS.—If motion for nonsuit or to direct a verdict is not made this Court cannot consider if there was evidence of negligence or wilfulness. Here both may be inferred from the act of the driver of an automobile in running his car across a bridge facing a frightened horse and striking and breaking the buggy.

2. IBID.—The driver of an automobile when meeting a restive horse on the highway must exercise the care which ordinary prudence requires under the circumstances.

Before GARY J. Orangeburg October Term 1909.   Affirmed.

Action by Benj. P. Gue against Durham S. Wilson. From judgment for plaintiff, defendant appeals.

*Messrs. Wolfe & Berry* for appellant, cite: *There being no evidence of negligence, verdict should be set aside:* 54 S. C. 405; 51 S. C. 296.   *Recovery cannot be had for act of negligence not alleged:* 45 S. C. 278.

*Messrs. Raysor & Summers* and *A. H. Moss* contra, cite: *Evidence shows negligence:* 78 S. C. 251; 1 L. R. A. N. S. 226; 116 Ky. 960; 82 S. C. 252.   *In absence of motion for nonsuit or to direct a verdict, Court cannot consider issues of fact:* 84 S. C. 484; *and may charge law applicable to punitive damages:* 72 S. C. 411; 79 S. C. 513; 78 S. C. 73; 75 S. C. 293.

October 18, 1910.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES.   This appeal is from verdict and judgment for $1,000 in favor of plaintiff against defendant in an action at common law to recover damages for injuries to plaintiff's person and his horse and buggy resulting from a collision on a bridge over Edisto River on the public highway with an automobile alleged to have been negligently and recklessly operated by defendant.

A motion for new trial was made and refused.

1       The first and third exceptions assign error in refusing new trial because there was evidence neither of negligence, nor of wilfulness.

As there was no motion for nonsuit, nor request to direct verdict on either ground, the exceptions are not properly before the Court. *Jennings* v. *Edgefield Mfg. Co.,* 72 S. C. 419, 52 S. E. 113; *Horn* v. *Railway Co.,* 78 S. C. 73, 58 S. E. 963; *Entzminger* v. *Railway,* 79 S. C. 154, 60 S. E. 441; *Elms* v. *Power Co.,* 79 S. C. 513, 60 S. E. 1110; *Baker* v. *W. U. Tel. Co.,* 84 S. C. 484.

We may add, however, that there was some testimony from which the jury may have inferred negligence and recklessness on the part of defendant as the cause of the injury.

There was testimony for plaintiff that the bridge was about twenty feet wide and sixty feet long, with abutments of some length, that when plaintiff's horse and buggy went upon one end of the bridge the defendant's automobile was standing noiseless at the other end, that when the horse got near the middle of the bridge within about thirty feet of the automobile, plaintiff put his machine in motion, with much noise and blowing the horn several times, that the horse became frightened and unmanageable and backed to the end of the bridge and turned upon the embankment where the buggy was struck by the automobile, the hind wheels crushed and plaintiff thrown out and injured to some extent, that when the buggy was struck defendant had driven the machine from

10—87

his right to his left side where the horse and buggy were and that defendant could have gone by to the right and could have stopped his machine before the collision, and that no effort was made to stop. The testimony for the defendant was to the effect that the horse did not become frightened until the machine was nearly opposite and then seemed to be frightened at something in front and backed or moved in front of the machine which then drove to the left to avoid collision with the horse, and that every effort was made to avoid a collision.

The second exception is as follows:

2. "The charge of the presiding Judge, taken as a whole, and thus considered, is erroneous in that it imposes upon the defendant a higher and greater degree of care in operating the automobile than 'such care as a prudent person would exercise' under the circumstances. The effect of the charge was, in substance, to instruct the jury that in case a horse should become frightened or unmanageable it was incumbent on the driver of an automobile to see that no injury or damage resulted to the occupants of the other vehicle. The charge is likewise open to the vice of making the automobile driver responsible for the safety of the horse-drawn vehicle and its occupants, thus imposing a higher degree of care than the law imposes in such cases, especially when he used the language: 'their use should be accompanied with that degree of prudence in management and consideration of the rights of others which is consistent with their safety,' and language of similar import throughout the charge."

The charge, bearing on this subject, which we here quote shows that the exception is not well founded: "Bear in mind that the public highway is for the public, and the man in the automobile has the right to use it, and the man with the horse has the right to use it, but neither has the right to use it to the exclusion of the other. They must each respect the rights of the other.

"Here is what the law books have to say: 'One operating an automobile on the public highway owes to the persons driving horses thereon, the duty carefully to control and operate the machine, so as to avoid causing needless injury; and this duty requires him to take into account the character of his machine, its general appearance, the noise accompanying its operation, its new use in the vicinity, its tendency to frighten horses, and, from such and all other pertinent considerations, to proceed with that speed and caution which reasonable care requires according to the place and presence of other travelers.' *Indiana Springs Company* v. *Brown,* Ind., 74 N. E., 615 (L. R. A., Vol. 1, New Series, 238).

"The amount of care and precaution to be exercised depends in a large manner on the situation at the time. What might be reckless driving in the city of Orangeburg might not be so considered on a county road; what might be considered proper care on the streets of Orangeburg might not be proper care in crossing a bridge or trestle or going up or down a hill. 'While automobiles are lawful means of conveyance, and have equal rights upon the public roads with horses and carriages, their use should be accompanied with that degree of prudence in management, and consideration of the right of others which is consistent with their safety. If the operator of an automobile knows, or by the exercise of ordinary care may know, that his machine has so far excited a horse as to render the animal dangerous and unmanageable, it is his duty to stop the automobile and take such other steps for the safety of those in the vehicle drawn by the horse as ordinary prudence may suggest.' *Shinkle* v. *McCullough,* 116 Ky., 960; 105 Am. St. Rep., 249; 77 S. W. 1 L. R. A. (N. S.)

"Now what would a man of ordinary prudence and care be called upon to do on an occasion such as has been detailed here to you from the witness stand. That is what the defendant in this case would be called on to do; that is what would be required of him, and if he exercised that ordinary care

that a man of ordinary care and prudence and foresight would have exercised to prevent a collision, then it would be an accident and he would not be liable. If he failed to observe that degree of care and ordinary prudence and caution, and foresight, that would be expected of a man of ordinary prudence and foresight, then he would be negligent, and if injury resulted from that negligence, then he would be liable for actual damages.

"If the injury was the result of a wicked, cruel, wanton spirit he would be liable also for punitive damages, damages to punish him for his wanton, wilful and reckless act. The difference is this: if a person through his negligence injures another, in his person or in his property, he is liable to compensate him for the actual damage that he has inflicted on him, he would be liable to compensate him to the extent of his actual injuries, because he was injured through his negligence. If he has been injured on account of the wanton and wicked spirit of the person who does the injury, or on account of the reckless disregard of the rights of another, then you can visit on the person committing the injury punitive damages. 'The rule of the common law is, and always has been, that while a person might travel the highway with a conveyance, or a loaded vehicle which is liable to frighten horses, yet he must, while doing so, exercise reasonable care to avoid accident and injury to others traveling along such highway.' That is the theory of the law, the law recognizes the right of each and both of them to use the public highway, but the one must have regard to the safety of the other. If it can be discovered by ordinary foresight, that an animal has become frightened, it is the duty of the driver of the automobile to stop and to take such precautions as would be taken by a man of ordinary prudence to prevent injury."

A consideration of the above charge as a whole shows that the Court held the defendant to the duty of exercising ordinary care under the circumstances. This was in accord with

the language of this Court in *Rochester* v. *Bull*, 78 S. C. 251, 58 S. E. 766.

"The duty devolves upon the drivers of such machines to exercise due care to prevent accidents. The amount of care necessary varies with the various circumstances, acts which in a given case might be negligence, in another might be due care."

We are not prepared to adopt as a correct statement of the common law that the driver of an automobile must stop, if it can be discovered by ordinary foresight that an animal has become frightened, for there may be circumstances wherein upon discovery that the horse is frightened the most prudent thing to do may be to get by with the automobile as quickly as possible so as to remove the cause of the fright. The true rule is that the driver must exercise the care which ordinary prudence requires under the circumstances, and this as stated was the general tenor of the charge, which as we construe it, does not impose the absolute duty to stop on discovery that a horse is frightened, but to stop if ordinary prudence requires it.

The Statute in this State (24 Stat. 965 amended 25 Stat. 80) requires that "a person operating a motor vehicle shall, at the request or upon signal by putting up the hand, from a person riding or driving a restive horse or horses or other draft animal, bring such motor vehicle immediately to a stop, if necessary, having due regard for safety of persons, vehicles and animals, and if traveling in opposite directions, remain stationary so long as may be reasonabe to allow such horses or animals to pass. Provided that in case such horse or animal appear badly frightened, or he is requested to do so, the person operating such motor vehicle shall cause the motor of such vehicle to cease running so long as shall be reasonably necessary to prevent accident and insure the safety of persons, vehicles and animals."

The judgment of the Circuit Court is affirmed.