6638

### HORN v. SOUTHERN RY.

1. CHARGE—CONTRIBUTORY NEGLIGENCE.—Construing the instructions as to the burden of proof of contributory negligence as a whole, it is held the jury could not have been misled into understanding the primary inquiry to be whether defendant had made out the defense of contributory negligence.

2. IBID.—NEGLIGENCE.—Portion of charge here complained of held not susceptible of the construction, plaintiff could recover unless defendant assumed and discharged the burden of proving by the preponderance of the evidence, the injury to have been due entirely to her negligence.

3. CARRIER—PASSENGER.—Instruction here did not impose on carrier any greater burden than the duty to take notice of, and to assist, those passengers who are unable to alight in safety without assistance. Duty of carrier to passengers in alighting from cars stated.

4. PUNITIVE DAMAGES.—The use of the word "carelessly" in stating the basis of punitive damages was not fortunate, but from all that was said, the jury could not have failed to understand recoveries for punitive damages could only be had for wilful or wanton misconduct. Evidence by the passenger, that when alighting encumbered with parcels, she missed the stool, because improperly placed, the conductor did not assist her, but when she fell he laughed at her, is some evidence of wanton misconduct.

Before KLUGH, J., Spartanburg, September Term, 1905. Affirmed.

Action by Mary Louise Horn and Ben Horn against Southern Railway. From judgment for plaintiff, defendant appeals.

*Messrs. Sanders* and *DePass,* for appellant, cite: *Error in charging burden was on defendant to establish the negligence of plaintiff:* 70 S. C., 525. *Charge as to duty of carrier to assist passenger in alighting was on the facts:* 61 S. C., 563; 51 S. C., 460; 47 S. C., 523.

*Messrs. DePass & DePass,* contra. No citations.

September 3, 1907. The opinion of the Court was delivered by

Mr. Justice Woods. The plaintiff, Mary Louisa Horn, her husband, John Horn, and her adult sister, on March 5th, 1905, were passengers from Union to Jonesville on the defendant's train. The action was brought for injuries alleged to have been received by the plaintiff in a fall due to the turning of a stool placed on the ground to aid passengers in alighting.

The plaintiff testified she had several parcels and asked the conductor to help her when she reached Jonesville; that her husband preceded her in getting off the train with their baby in his arms; that neither conductor nor porter rendered her any assistance; that when she stepped from the car with a clothes case in one hand, a hat and umbrella in the other, the stool turned and threw her to the ground because it was not set in the right place; that the conductor was standing on the ground where the passengers were alighting, saw her fall, and so far from offering her assistance, actually laughed at her. The conductor testified he had no recollection of the request for assistance; that he did take the arm of the plaintiff as of other women to aid them in stepping off; that the stool was placed in exactly the proper place, but he observed the plaintiff come down the steps looking over at the crowd and not at the stool; that the plaintiff merely staggered around without falling, and made no complaint whatever. He denied laughing at the plaintiff. His testimony that a number of other passengers had preceded the plaintiff and alighted in safety was not disputed. There was some evidence that the place where the car stopped was not quite level, but this was denied by the conductor. This statement makes the issues of fact sufficiently clear. The jury found a verdict in favor of the plaintiff for eight hundred dollars. The appeal relates to alleged errors in the charge of the Circuit Judge. We do not think there is any ground upon which this Court can interfere with the judgment.

1. In imposing upon the defendant the burden of proving contributory negligence by a preponderance of the evidence, the Circuit Judge by a verbal slip used language which might be construed to mean that the primary inquiry was whether the defendant had made out the defense of contributory negligence, rather than whether the plaintiff had proved the defendant's negligence as a proximate cause of injury. But at the beginning of the charge, in the clearest language, he had placed on the plaintiff the burden of proving by the preponderance of the evidence, the allegation that the negligence of the defendant was a proximate cause producing injury to the plaintiff, and had charged the plaintiff could not recover without discharging this burden. So taking the instruction on this point as a whole, we do not think it could be inferred the jury were misled.

2. There is also language in the charge, which, standing alone, would bear the meaning that the defendant could not rely on the position that the plaintiff's injury was due entirely to her own negligence, unless it proved that fact by the preponderance of the evidence. But this language was used in the instructions concerning contributory negligence. It would be going too far to infer misapprehension by the jury on this point; for the instruction that the plaintiff could not recover without proving affirmatively by the preponderance of the evidence her injury to have been due to the negligence of the defendant, certainly negatived the idea that she could recover unless the defendant assumed and discharged the burden of proving by the preponderance of the evidence the injury to have been due entirely to her negligence. The burden of proving the defendant's negligence as the proximate cause would imply to any reasonably intelligent mind the burden of proving the absence of the plaintiff's negligence as the sole proximate cause. The charge, therefore, does not warrant a reversal on the authority of *Kennedy* v. *So. Ry. Co.,* 59 S. C., 535, 38 S. E., 169, and *Michener* v. *Tel. Co.,* 70 S. C. 525, 50 S. E., 190. If inadvertences like those relied on here are

deemed by counsel to be material they should be called to the attention of the Circuit Judge at the close of the charge. If they escape the attention of vigilant and learned counsel this Court ought not to infer they were so grasped by the jury as to lead them into error.

3. The defendant submits, in the next place, the following was a charge on the facts: "Well, now, I instructed you that it was bound to furnish passengers with safe and proper appliances and facilities for riding on its trains. Now, if that included the assisting of passengers from the train by the railroad company's handling whatever parcel or package the passenger has, if a railroad company of ordinary prudence would do that, then in this case it is bound to do that. As a matter of course, the railroad company, no more than any other individual, can be held to do that which is impossible, and the railroad company must go upon appearances as the facts and circumstances make these appearances, and if a passenger is burdened with baggage and the employee of the railroad company sees that, why the railroad company is bound to, if it becomes necessary to the safe alighting of the passenger from the train, for the railroad company to assist in handling any package or boxes. Now, it is the duty of the railroad company to do that. It is not the duty of the railroad company to go through the train and see each passenger to know whether he wants assistance or to ascertain what baggage he might happen to have to get off with. But if it is apparent, and would be apparent to a person of reasonable observation that the passenger is in need of assistance, then the railroad is bound to furnish assistance just the same as it is bound to assist a person in any other way prevented from safely alighting without assistance, if the person is sick or aged or infirm or in any peculiar circumstances which are apparent to the railroad company or comes to the knowledge of the railroad company, which renders a greater degree of care necessary, why the railroad company is bound to afford that additional assistance, and exercise that additional degree of care if such appearances

are obvious.   As a matter of course, the railroad company is
not bound to exercise that same degree of care in the case
of an ordinary person alighting from its train." We do
not discern in this language anything more than a fair state-
ment of the law as to the duties of a carrier to passengers on
its train.

The Courts seemed at one time inclined against holding a
carrier bound to aid in the alighting even of a passenger
manifestly disabled from sickness or infirmity; the view
being that such a passenger in undertaking a journey should
provide for his own assistance.   But it is now generally held
that the carrier is bound to render reasonable assistance to a
passenger whose inability to take care of himself has been
made known to the carrier.   *Sims* v. *Ry. Co.,* M. 27 S. C.,
268, 3 S. E., 301; *Doolittle* v. *Ry. Co.,* 62 S. C., 130, 40 S.
E., 133; *Madden* v. *Ry. Co.,* 41 S. C., 440, 19 S. E., 951.

No doubt justice requires the exercise of great caution on
the part of the Judges in stating this principle of law, and
on the part of the juries in applying it, especially when neg-
ligence is charged against the carrier for failing to assist a
passenger encumbered with parcels.   As a general rule it is
not the duty of the carrier to provide servants to carry hand
parcels.   Considering the number of passengers usually on
a car and the unreasonable burden it would be on the rail-
road to employ attendants enough to assist all of them, as a
general rule, passengers ought not to encumber themselves
with parcels they are not able to carry with safety.   But
there are exceptions to these rules which the carrier must
recognize when brought to his notice, especially where as-
sistance is asked, in form of the aged or maimed or sick, or
children, or adult persons traveling with small children who
may be unable to carry the parcels usually allowed to the
passenger as reasonably necessary.   The charge of the Cir-
cuit Judge did not impose any greater burden on the carrier
than the duty to take notice of such exceptions.

The fourth exception relates to the following instruction:
"Well, now, the plaintiff claims not only damages to com-

,pensate her for loss or injury, but also claims punitive dam-
ages.    She claims the railroad was wanton and wil-
4    ful in its negligence, and therefore, it ought to be
punished by the awarding of damages, besides any
damages which may be awarded for her actual injuries or
loss.    That's what is meant by punitive or vindictive dam-
ages, damages to punish a wrong-doer.    In this case the
plaintiff claims the railroad company was a wrong-doer and
ought to be punished because it injured her wilfully and
wantonly, that is, it intentionally injured her, and that it
injured her carelessly, didn't care whether she suffered in-
jury or not.    That is what is meant by wilfulness.    If you
find that the railroad company did injure plaintiff and was
either wilful or wanton, and willed to do her injury, an in-
tentional injury, that makes a case where the railroad com-
pany ought to be visited with such punishment as will pre-
vent it from being wilful or careless, or wantonly injuring
a passenger or any other person in the future."    The de-
fendant submits this charge was erroneous in that (1)
"there is no evidence in the case to warrant the submission to
the jury of the question of punitive damages;" (2) by this
charge his Honor made the terms "wilful" and "careless"
synonymous, and instructed the jury that "a verdict for puni-
tive damages could be given if the defendant either wilfully,
intentionally, or carelessly injured the plaintiff."    The use
of the word "carelessly" in stating the basis of punitive dam-
ages was not fortunate, as it is more nearly synonymous with
negligently or inadvertently, than with wilfully or wan-
tonly.    But taking all that was said on the subject together,
the jury could not have failed to understand punitive dam-
ages could be recovered only for wilful or wanton miscon-
duct.

The sworn statement of the plaintiff that when she fell
the conductor made no effort to aid her, and laughed at her,
is some evidence of wanton misconduct.    The Court cannot
interfere with the right of the jury to pass on the credibility
of the testimony.

But in addition to this there was no motion for nonsuit as to punitive damages, nor request to charge that there was no evidence upon which punitive damages could be recovered. *Jennings* v. *Edgefield Mfg. Co.,* 72 S. C., 411, 52 S. E., 113.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.