12625

BREWER v. ATLANTIC COAST LINE RAILROAD CO. *ET AL.*

(147 S. E., 596)

*Mr. F. L. Willcox,* for appellants,

*Messrs. D. Gordon Baker, L. M. Gasque,* and *A. F. Woods,* for respondent,

March 29, 1929.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages for personal injuries to the plaintiff alleged to have been caused by the joint and concurrent negligence and recklessness of the defendants in certain particulars named in the complaint.

It appears that the plaintiff, Gary H. Brewer, at the time almost sixteen years of age, was placed by his father, J. K. Brewer, on February 25, 1925, in the Saunders Memorial Hospital in Florence, where he remained until the evening of March 15. During that time he was treated for some kidney trouble, and also had an operation for the removal of a growth from his bladder. On the evening of March 15, the plaintiff having "run no temperature" on that day, his physicians thought it safe for him to return to his home near Nichols, a regular station on the branch of the Atlantic Coast Line Railroad between Florence and Wilmington. Dr. Herlong, one of the physicians at the hospital, took plaintiff to the station at Florence, secured for him a ticket from that point to Nichols, and assisted him in getting on the train.

The complaint alleges that "when the train upon which plaintiff was a passenger reached Nichols, and the conductor of the train, the defendant, Bartow L. Gilbert, descended therefrom, plaintiff's father informed him that he had a sick boy on the train who desired to get off at Nichols, but the conductor stated that he had no such passenger aboard for Nichols, and immediately ordered the train ahead, and in response thereto the train moved off, while plaintiff was trying to leave the train, without affording plaintiff reasonable time to disembark and at such a rapid rate of speed that plaintiff could not alight therefrom in safety."

It is further alleged that the plaintiff, after the train left Nichols, sought out the conductor, and told him that he desired to get off at Nichols; that he was in a very weakened condition as a result of a surgical operation; that he was unable to walk back to Nichols, and that it would be necessary to back the train to that point for him to get off, but that the conductor refused to do so, and stopped the train and put the plaintiff off in Lumber River swamp about three-fourths of a mile from Nichols. It is also alleged that the night was very cold, and that plaintiff in his feeble condition was forced to make his way back to Nichols as best he could, which he finally accomplished, with much painful effort and intense physical and mental suffering, partly by walking and partly by crawling on his hands and knees; that, as a result of the exposure and ordeal through which he passed, he was confined to his bed for approximately four weeks, and suffered great physical and mental pain, it being necessary that he be kept under the influence of anodynes in order to alleviate his suffering.

The defendants, answering, denied the material allegations of the complaint, and pleaded contributory negligence on the part of the plaintiff.

The case was tried before his Honor, Judge Grimball, and a jury, at the November, 1927, term of the Court of Common Pleas for Florence County, and a verdict was given for the plaintiff for actual damages in the sum of $7,500.

The defendants thereupon made a motion for a new trial upon the grounds that the verdict was contrary to the weight of the evidence, and that the damages allowed were excessive. This motion was overruled by the Court. The defendants now appeal by several exceptions, charging the trial Judge with having committed error in giving certain instructions to the jury, in refusing to charge certain of defendants' requests, and in refusing to grant a new trial on the grounds stated.

At the request of plaintiff's counsel, the Court charged the jury as follows:

"If a passenger is sick, infirm, handicapped by physical disability, or there are peculiar circumstances, either of which should be reasonably apparent to the railroad company, or of which it has notice, it then becomes its duty to render such assistance to the passenger as is reasonably necessary under the circumstances, the railroad company being bound to render reasonable assistance to a passenger whose inability to take care of himself is apparent to the railroad company or has been made known to it."

It is not contended that this charge is not a correct abstract proposition of law (*Horn v. Southern Railway,* 78 S. C., 67, 58 S. E., 963) ; the objection made is that there was no testimony from which the jury might infer that the conductor had notice of plaintiff's enfeebled condition or that such condition was reasonably apparent to him, and that the charge tended to indicate to the jury the opinion of the trial Judge as to the facts to the prejudice of the defendants.

The conductor testified that there was nothing in plaintiff's appearance that would indicate he was suffering from any physical ailment or trouble; the Pullman conductor testified to the same effect. The testimony is undisputed, however, that plaintiff had been in the hospital for more than two weeks; that he had been ill for some time before he was sent there; that he had been operated upon; and that he had been running temperature up to the day that he was sent home.

Dr. Herlong, who was his physician at the hospital, and who put him on the train, testified that his weakened condition was apparent to any one seeing him. The father of the plaintiff testified that he gave notice to the conductor, upon the arrival of the train at Nichols, that he was expecting his son upon that train from the hospital at Florence. There is also testimony that the plaintiff himself notified the conductor, after the train had left Nichols, of his physical condition. We think that, in view of the testimony, the instruction complained of was properly given by the Court.

The Court also made the following charge, embodied in plaintiff's fifth request:

"If the carrier can with safety discharge his passenger at the point of destination, such passenger has the right to such action; and if from any cause and in a reasonable distance from such station that has been passed without the passenger having been afforded an opportunity to alight at his destination such omission is discovered, it is the duty of the carrier to return such passenger to that destination. It will not be excused because it is inconvenient or troublesome; it will only be excused upon the proof of some controlling exigency, and the burden of such proof is upon the carrier the moment the passenger proves that he had the right of passage to a certain point and a compliance on his part with ordinary care, and that such point of destination was passed by the carrier without giving the passenger an opportunity of getting off then."

The substance of the appellants' objection to this charge is that all of the testimony tended to show that ample opportunity was given the plaintiff to disembark at his destination in safety, and that his failure to get off was due to his own act in attempting to leave the coach at the rear instead of at the front where the passengers were expected to get off; that the charge must have caused the jury to believe the Judge was of the opinion that there was evidence from which the jury could properly find that the respondent was not given sufficient time to alight at his destination.

The statute law of the state requires railroad companies to stop their trains a sufficient length of time for passengers to get off and on at stations, and what is a sufficient time is a question for the jury. *Shealey v. Railroad Co.,* 67 S. C., 61, 45 S. E., 119. The following charge of the trial Judge in the *Shealey case* was approved by the Supreme Court:

"What is a sufficient time, is a question for the jury under all the circumstances of each case. When the train stops, what must the conductor do, if anything, to secure the disembarkation of passengers? He must stop a time sufficient to let them off, the statute law so declares; but it would be an assumption of your powers by me to charge you he should or not look to see if the passengers have disembarked, or to charge you he should do any other specific act. The jury must take into consideration the speed of trains, the distance traversed, the number of the stops, the crowds carried, the habits of men, and inquire if under all the circumstances there present the conductor exercised the highest degree of care in the particular case; if he did, the company is absolved from liability; if he did not, the company is liable if such shortcoming was one of the proximate causes of an injury to a passenger."

In the case at bar there was testimony tending to show that the train stopped from one to two minutes. There was also testimony indicating that it stopped for a very short time —only long enough for the father of the respondent to tell the conductor that he was expecting his son on that train from the hospital in Florence, and for the conductor to reply that he was not on the train and to give the signal for leaving. When the plaintiff was put on the train at Florence, he entered the rear door of the coach in which he rode; he testified that, when he reached his destination at Nichols, he tried to get out at the same rear door, and found it locked; that he then turned and started to go to the front of the coach, but knew he could not get there, so he went back to

the rear. Under the conflicting testimony on this point, it could not be assumed, as a matter of law, that the train did stop a sufficient length of time for the respondent to alight, but the evidence made an issue of fact for the jury which warranted the Court in giving the instruction complained of.

We shall consider the appellants' third and fourth exceptions together. By the third exception error is assigned to the trial Court in charging the plaintiff's ninth request and by the fourth exception in refusing to charge the defendants' first request. The plaintiff's ninth request was as follows:

"Upon proof that a passenger is injured on a railroad train as the result of some instrumentality or agency of the carrier, or some act or omission or commission of the servants of the carrier charged with the operation of the train, the law presumes that the railroad company was negligent."

The following was the defendants' first request, which the Court refused to charge:

"This is not a case in which a passenger was injured by an instrumentality of the common carrier, and there is no presumption of negligence on account of the injury which plaintiff in this case claims to have sustained."

Counsel for appellants contends that the Court erred in charging the plaintiff's ninth request, for the reason that there was a total absence of testimony that the respondent was injured while *on* a railroad train, and that the principle stated in plaintiff's requests, and charged by the Court, was therefore inapplicable, and doubtless led the jury to believe that they had a right to predicate a verdict upon a presumption of negligence that did not exist, which was highly prejudicial to the appellants; that, if this contention is held to be sound, then the appellants were entitled to have the Court charge their first request; and that his failure to do so was reversible error.

The allegations of the complaint are that the plaintiff sustained his injuries through the negligent acts of the defend-

ant company in failing to stop the train at Nichols a sufficient length of time for him to get off, and in subsequently failing, under these conditions, to return him to the station, though informed of his weak and enfeebled condition. There was testimony, as we have pointed out, tending to support these allegations, making an issue of fact for the jury. These were matters over which the company had control, and for which it was bound to make provision in the exercise of that high degree of care for its passengers with which it is charged; and if, under all the circumstances, it failed to stop the train at plaintiff's destination a sufficient time for him to alight, but, through no fault of his, carried him beyond his destination, and discharged him from the train in the Lumber River Swamp, and he thereby sustained injuries, such injuries had their inception in, were the natural and proximate result of, and flowed as a natural consequence from, the carrier's delict while the plaintiff was still on the train. Under this view of the matter, there was no error as complained of.

The appellant's fifth exception imputes error to the trial Court in refusing to charge their fifth request, in the following language:

"When a passenger buys a ticket to his station, boards the train, but is carried by his station without negligence on the part of the carrier and the conductor offers to take him on and return him to his station by next train, but, at his request, the train is stopped beyond his station and he walks back in the night time, no indignity or rudeness having been offered him, he cannot recover punitive damages."

As we have already indicated, there was testimony adduced by the plaintiff from which the jury might infer negligence on the part of the appellants as alleged in the complaint. The jury returned a verdict for actual damages only, and it is therefore clear that, even if the Court erred in refusing to charge the appellants' request, the error was harmless.

In the case of *Comer v. Railway Co.*, 105 S. C., 480, 90 S. E., 188, it is said (quoting syllabus) :

"In a railroad passenger's action for injuries, where verdict for plaintiff for actual damages negatived the existence of willfulness, error in a charge in reference to punitive damages on the ground of willfulness was harmless."

The appellants also complain that the Court committed error in refusing to grant a new trial on the ground that the verdict was contrary to the overwhelming weight of the testimony. This assignment of error cannot be sustained. There being some evidence to support the verdict, the Court's refusal to grant a new trial was not error of law. *Jackson v. Railway Co.*, 77 S. C., 550, 58 S. E., 605; *Bristow v. Railway Co.*, 72 S. C., 43, 51 S. E., 529; *Shores v. Southern Railway*, 72 S. C., 244, 51 S. E., 699; *Strickland v. Capitol City Mills*, 70 S. C., 211, 49 S. E., 478; *Hogg v. Insurance Co.*, 104 S. C., 484, 88 S. E., 102.

Nor does it appear that the Court erred in refusing to grant a new trial on the ground that the verdict was excessive. In *Steele v. Railway Co.*, 103 S. C., 102, 87 S. E., 639, with respect to this question, the Supreme Court had this to say:

"Under the Constitution and statutes, the discretion to control juries in respect to the amount of their verdicts in actions for damages is vested in the trial Judges, who, it must be presumed, recognize and appreciate their responsibility, and exercise the discretion vested in them with fairness and impartiality. This Court has no jurisdiction to review matters of fact in an action at law; and, therefore, unless a verdict is wholly unsupported by evidence, or is so excessive as to justify the inference that it was capricious, or influenced by passion, prejudice, or other considerations not found in the evidence, if it is excessive, the responsibility for failure to reduce it must rest upon the trial Judge."

We cannot say that the verdict in the present case is wholly unsupported by evidence, or that it is so excessive as to justify the inference that it was the result of caprice, passion,

or prejudice. Consequently, this Court cannot interfere. *Bing v. Railway Co.*, 86 S. C., 528, 68 S. E., 645; *Graham v. Atlantic Coast Line Railway Co.*, 89 S. C., 1, 71 S. E., 235.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.