16376

SINGLETARY v. ATLANTIC COAST LINE R. CO.
(60 S. E. (2d) 305)

*Messrs. Hagood, Rivers & Young,* of Charleston, and *Marion F. Winter,* of Moncks Corner, *for Appellant,*

*Messrs. Joseph A. Newell* and *Norval N. Newell,* of Moncks Corner, *for Respondent,*

214

June 29, 1950.

BAKER, Chief Justice.

On the morning of May 28, 1947, the respondent, an experienced traveler by train, was a passenger on appellant's train from Sumter to Moncks Corner. Upon reaching his destination, and in attempting to alight from the train, the respondent, who describes himself in his complaint as being "visibly deformed and a crippled midget," fell and suffered some personal injury.

In his complaint against the appellant railroad it is alleged that the conductor on appellant's train, although aware of respondent's handicaps, negligently, carelessly, willfully and wrongfully caused him to suffer a fall by not assisting him from the train to the stool placed beneath the train steps for passengers of ordinary stature to alight upon and step to the ground; and that after he fell, the said conductor willfully, maliciously and wrongfully ridiculed and laughed at him because of his slight stature. We have set out only such allegations of acts of omission and commission as the respondent relied upon for a recovery in the trial of the case. (In testifying the respondent stated that upon the train stopping at Moncks Corner, "the conductor took the little box (stool) and carelessly threw it off," which is at variance with the allegation thereabout contained in his complaint.)

The answer of the appellant denied all allegations of negligence, willfullness and wantonness on its part, and further, alleged that the contributory negligence, recklessness, willfullness and wantonness of the respondent, combining and

concurring with the alleged negligence, recklessness, willfullness and wantonness of the appellant was the proximate cause of the accident resulting in such injuries as the respondent suffered, and without which the accident would not have occurred.

Upon the trial of the case at the September, 1948, term of the Court of Common Pleas for Berkeley County, and at the conclusion of the respondent's testimony, the appellant moved for a nonsuit, on the grounds: (1) That there was no evidence of actionable negligence on the part of the appellant that proximately caused respondent's injury; (2) That the only reasonable inference to be drawn from the testimony was that the sole proximate cause of respondent's injury was the negligence, willfullness and recklessness of the respondent, who in broad daylight, and with knowledge of his physical limitations, attempted to alight from the train (unassisted) under conditions known to him, and which would bar a recovery; (3) That the only reasonable inference to be drawn from the testimony was that, even if there were some evidence of negligence, willfullness and recklessness on the part of the appellant, the respondent failed to exercise the slightest care and caution for his own safety, and was guilty of such gross contributory negligence, contributory willfullness and contributory recklessness as would bar a recovery; and (4) That there was no evidence of any conduct on the part of the appellant that would sustain a verdict for punitive damages.

The motion for the nonsuit was refused, and at the conclusion of all of the testimony, the appellant moved for a direction of verdict in its behalf on the same grounds as it had moved for a nonsuit, and on additional grounds which in effect are encompassed by the grounds stated on the motion for a nonsuit.

The motion for a direction of verdict as to actual and punitive damages was likewise refused, and the case submitted to the jury, resulting in a verdict in favor of the

respondent for Two Thousand ($2,000.00) Dollars actual and Five Hundred ($500.00) Dollars punitive damages, the full amount demanded in the complaint.

Appellant then made a motion for judgment *non obstante veredicto,* and failing in this, for a new trial. This motion was based on grounds embodied in the former motions for nonsuit and direction of verdict, and further, that there was no evidence of wantonness or wilfulness on the part of the appellant to justify a verdict for punitive damages; and that the verdict for the full amount sued for in view of the slight injury sustained by the respondent showed passion and prejudice and a complete disregard, of the evidence by the jury. This motion was refused, and judgment on the verdict was duly entered.

In the appeal to this Court from the judgment, appropriate exceptions have been taken to said adverse rulings of the trial judge, and which exceptions make it necessary for us to give a brief summary of the testimony relied upon by the respondent to prove negligence, willfullness and wantonness on the part of the appellant, and that such was the proximate cause of the injury suffered by the respondent.

The respondent is four feet tall, his legs being very short, about eighteen inches long, and he weighs ninety pounds. At the time of the trial, he was forty-eight years old. His physician and witness described him as being very abnormal in his anatomical construction, and in being more specific, stated that he is of the dwarfish type, that his muscular contour is abnormal and irregular, that he is physically handicapped in comparison to a normal person in getting about and propelling himself forward, and very much so in the use of his legs. But there is no suggestion that he has any mental impairment.

The respondent testified that when he boarded the train in Sumter, it being scheduled to leave at 7:10 o'clock that morning, he was helped on the train by the conductor; that

the train reached Moncks Corner at around 9 o'clock; that when the station signal blew for Moncks Corner, he was sitting about midway the coach, and the conductor was passing through; that he inquired of the conductor as to which door of the coach or car he should get off and was told "straight ahead." We here quote from respondent's testimony: "So as not to be in the way of the other people getting off, I went up to the front seat of the coach, to be ready to get off. When the train stopped I got up to get off. The conductor was in front of me and several people behind me getting off. The conductor took the little box and carelessly threw it off, knowing I was getting off. I walked down to the bottom step, and I didn't know whether I could reach it or not. As there was two people behind, I took a chance and stepped off, and I just did touch the corner of it, and it slipped out from under me, and I slipped, and it threw me over on the rocks."

At the time the respondent "took a chance and stepped off" the train, the conductor of the train was standing about five or six feet away from the train door, and within easy calling distance if the respondent had desired assistance in getting off the train, but he did not seek assistance although in a better position to know than anyone else his physical limitations.

The evidence of willfullness and wantonness mainly relied upon by the respondent for the recovery of punitive damages is his testimony that after he had fallen and had been helped to his feet by the conductor, the conductor said to him, "Shorty, I hope you are not seriously hurt," as which time the conductor was "smiling, laughing," and his attitude "wasn't so pleasing."

We have necessarily stated the testimony in the light most favorable to the respondent—have followed his own testimony. While we cannot let the testimony on behalf of the appellant influence us in passing upon whether the trial Judge should have granted appellant's motion for a direction of

verdict, yet it is but fair to the appellant to herein state that the conductor testified that the respondent was the only (white) passenger whose destination was Moncks Corner; that he was standing by the steps of the white coach to assist (white) passengers (presumably the respondent) coming down the steps; that he saw the respondent coming down the steps, but didn't have time to assist him because when the respondent got to the bottom step, he turned his back to him, caught the grab-iron (on the steps) and "slid down"; and that when the respondent "slid down" to the bottom of the grab-iron, he turned loose and fell on the ground; that he assisted the respondent to his feet, and his glasses having dropped off when he fell, picked up his glasses and returned them to respondent, inquired if he was hurt, and received a reply in the negative; that he at no time addressed the respondent as "Shorty," nor did he smile or laugh at him.

It appears to be undisputed that the train was stopped at Moncks Corner at the usual place, and that the distance from the bottom step on a passenger car to the step box placed for passengers to step on in alighting therefrom is eleven inches, and from the bottom step to the ground it is twenty-three inches. These are approximately the measurements at the place where the respondent was detraining.

There are three postulates which we will keep in mind. (1) A common carrier of passengers is due such passengers the highest degree of care, but is not an insurer of the safety of passengers under all circumstances. (2) If a passenger is handicapped by physical disability which should be reasonably apparent to the employees of the carrier, or of which they have notice, it then becomes its duty to render such assistance to the passenger in boarding and alighting from trains as is reasonably necessary under the circumstances, but the passenger must give the employees of the carrier a reasonable opportunity of rendering such needed assistance. (3) In an action in tort based on negligence, the negligence of the defendant must be the

proximate cause of the injury to the plaintiff. Even though there may be some testimony from which it could be inferred that a defendant was negligent, a plaintiff cannot unnecessarily and consciously take a risk which may or may not result in injury, and when it does result in injury, then recover damages therefor against a defendant. In other words, the law requires that a passenger on a railroad train should use every reasonable care to avoid injury to himself, and if he fails to use such care as a man of ordinary prudence and caution would have used under the surrounding circumstances, and is injured as a result thereof, he cannot recover. For the foregoing well recognized legal principles, citation of authority is unnecessary.

The first case cited and relied upon by the respondent for an affirmance of this judgment is *Brewer v. Atlantic Coast Line Railroad Co.,* 149 S. C. 454, 147 S. E. 596. This was *not* a case where a passenger who was sick, infirm and handicapped by physical disability was injured *in disembarking from a train.* The passenger and plaintiff in that case was a boy almost sixteen years of age who was returning to his home at Nichols, S. C., from a hospital in Florence where he had undergone a surgical operation, and was in a weakened condition as a result thereof. When the train stopped at Nichols and the conductor stepped off and to the ground, plaintiff's father informed the conductor that he was expecting his son on that train from the hospital in Florence. The conductor stated such a passenger was not on the train and immediately gave the signal for leaving, and the train commenced to move before the passenger in his weakened condition could reach the exit door of the train. After the train left Nichols, the passenger sought out the conductor and told him he desired to get off at Nichols; that he was in a weakened condition from an operation, was unable to walk back to Nichols, and it would therefore be necessary to back the train to that point for him to get off. This the conductor refused to do, stopped the train and

put the passenger off in Lumber River Swamp about three-fourths of a mile from Nichols, necessitating his walking and crawling back in his enfeebled condition on a very cold night, resulting in serious damage to him. It was under these circumstances that this Court held that "in view of the testimony" the following instruction of the trial Judge to the jury, based on the decision of the Court in *Horn v. Southern Railway,* 78 S. C. 67, 58 S. E. 963, and the cases cited therein, was properly given:

"If a passenger is sick, infirm, handicapped by physical disability, or there are peculiar circumstances, either of which should be reasonably apparent to the railroad company, or *of which it has notice,* it then becomes its duty to render such assistance to the passenger as is reasonably necessary under the circumstances, the railroad company being bound to render reasonable assistance to a passenger whose inability to take care of himself is apparent to the railroad company or *has been made known to it."* (Emphasis added.)

The next case relied upon by the respondent is *Brodie v. Carolina Midland R. R. Co.,* 46 S. C. 203, 24 S. E. 180, 184. The plaintiff in that case was a passenger and was injured in alighting from the train. She alleged that the defendant railroad negligently failed to supply a stool or other means necessary for her to alight in safety, and that she was compelled to jump to the ground at an improper and unsafe place, thereby suffering injury. At the conclusion of plaintiff's testimony, the defendant moved for a nonsuit, which motion was refused, the trial Judge stating: "The plaintiff testified that she undertook to step down, and she found that she could not, and she had to jump. Now what were the circumstances surrounding that jump? If she had stood up voluntarily and jumped, that might or might not have been contributory negligence. But starting to get out, and finding that she could not without jumping—was she so far she could not get back? That is a question of fact. Now the only thing I can do is to put it to the jury: if she

contributed to the (injury?) she cannot recover, but to say whether her act of jumping was contributory (negligence) or not, would be passing on a question of fact. For that reason I must refuse to grant the nonsuit."

After quoting the ruling of the trial Judge, the opinion continued: "The appellant, in his able argument at bar, admits the rule to be, that if there be any evidence in support of the allegations of the complaint, however slight, a nonsuit should not be granted, but he contends, that under the construction of this rule by the court in the case of *Pool v. Columbia & G. R. R. Co.*, 23 S. C. 286, 289, where it said: 'It may be true that whenever plaintiff alleges in his complaint facts constituting a cause of action and offers testimony sufficient to go to the jury therein in the first instance, yet if he admits the defence relied on, and that defence be one which if true would, as a matter of law, defeat his action, his case becomes a case where there is a total failure of evidence—' that is, a total failure of evidence as to his legal right, and subjecting him to a nonsuit.' That when the defendant admitted that she jumped from the step, that thereby she established a case of contributory negligence, which was the defendant's defence to her action, and a nonsuit was proper. We think the language of the court in *Pool v. Columbia & G. R. R. Co. supra,* properly states the rule in such cases, but we are entirely satisfied with the view the Circuit Judge adopted in the case at bar. The mere fact that plaintiff jumped from the lowest step at the rear of the coach in which she was being transported as a passenger on the defendant railroad, was not all the testimony bearing on this matter. Besides this fact, there were others. The conductor stood on the platform, calling out, 'All off for Whaley's;' the distance from the lowest step to the ground was from two and a half to three feet; the lady had gotten on the lowest step and tried to reach the ground in that way and could not; no stool was placed beside the steps to assist her; no offer from the conductor or any one was made to help

her. *Under such circumstances,* we do not see that the Circuit Judge was to esteem such evidence, introduced as it was by the plaintiff, as establishing contributory negligence to such an extent as to support a nonsuit." (Emphasis added.)

Another case relied upon by the respondent is *Madden v. Port Royal & W. C. Railroad Co.,* 35 S. C. 381, 14 S. E. 713, 28 Am. St. Rep. 855.

The only question presented by the appeal in that case was whether the Circuit Judge erred in overruling the demurrer based upon the ground that the complaint did not state a cause of action. The plaintiff was a passenger on the defendant's train, her destination being High Point, in the County of Laurens, South Carolina, where, in getting off the train, she alleged that she received injuries due to the negligence of the defendant. The complaint alleged that it was the duty of the defendant, a common carrier, to have a suitable stopping place at its station, and to provide a foot-stool at the steps of its car for the use of passengers alighting therefrom; that on this occasion the defendant negligently failed to stop its train at the usual stopping place, but stopped some distance therefrom and at a point where the distance from the steps of the train to the ground was considerable and unsafe; that the defendant knew that the plaintiff "was a lady in delicate health," and that it was dangerous for her to alight from the train without the use of a foot-stool, which was not provided for her, although it was the custom and duty to provide one; and that in consequence of the negligence of the defendant, and in consequence of said train stopping only a very short time, the plaintiff, in alighting from the train was compelled to jump therefrom to the ground, and in so doing was much injured, etc.

In affirming the order overruling the demurrer to the complaint, the Court states, in effect, that if the facts alleged in the complaint should be established to the satisfaction of the jury, *and nothing more should appear,* it could not under-

take to say that the jury might or could not infer negligence on the part of the defendant.

Our attention is also directed to the case of *Talbert v. Charleston & Western Carolina Railway*, 72 S. C. 137, 51 S. E. 564. That case came to this Court from the sustention of a demurrer to the complaint on the ground that it did not state a cause of action. Among other allegations of negligence on the part of the railway company, the plaintiff alleged that he was a man having only one hand which was observed by the conductor, who invited him as a passenger to board a train which had been standing still but which had been signalled to start moving, and which would be in motion ere the plaintiff could reach it, and gave him no assistance in getting on the moving train; that in attempting to board the moving train as he was invited to do by the conductor he was brought in contact with a large trunk which had been left on the station premises in close proximity to the railroad track, finally resulting in his falling from the steps of the car he was trying to board, and receiving serious injury.

All that this case undertook to hold as to this allegation of negligence was that in passing on a demurrer thereto, the Circuit Judge could not hold as a matter of law that the plaintiff was guilty of such contributory negligence as would defeat a recovery.

Applying the postulates hereinbefore set out to the testimony of the plaintiff-respondent herein, is appears to us that the trial Judge was in error in refusing the motion of the appellant for a direction of verdict.

At the time the respondent came down the steps of ▉ the coach he had been riding for the purpose of detraining, he didn't know where the step-stool usually provided for the use of passengers had been placed (or fallen when as he testified, though there is no allegation of negligence thereabout, that the conductor had carelessly thrown

it off), and the conductor was only five or six feet away from the steps, and was therefore readily available for assistance. So far as his testimony discloses, no passenger also intending to alight from the train was urging him to get off the steps. The only reasonable inference to be drawn from his testimony is that he concluded that he needed no assistance, and decided to take the chance of getting off without it.

The respondent, who was not a stranger to traveling by train, knew his physical limitations better than anyone else, and it is difficult for us to see why the conductor of the train should have been required to take more precautions for the safety of the respondent than he himself took.

While we have great sympathy for the respondent, yet we must conclude that the trial Judge was in error in refusing the appellant's motion for a direction of verdict it its behalf; and the judgment is therefore reversed and the case is remanded for entry of judgment for the appellant.

FISHBURNE and OXNER, JJ., concur.

STUKES and TAYLOR, JJ., dissent.

TAYLOR, Justice (dissenting).

I regret exceedingly that I am unable to agree with the majority opinion in this case.

I am of the opinion that there is sufficient testimony to require the case being submitted to the jury upon the question of actual damages, bearing in mind that a scintilla of evidence, under the scintilla rule which prevails in this state, is any material evidence that if true would tend to establish the issue in the mind of a reasonable juror. *Taylor v. Atlantic Coast Line Railroad Co.*, 78 S. C. 552, 59 S. E. 641; *National Bank of Honea Path v. Thomar J. Barrett, Jr. & Co.*, 173 S. C. 1, 174 S. E. 581; *Bell v. Bank of Abbeville*, 211 S. C. 167, 44 S. E. (2d) 328.

Respondent, a man of forty-eight years of age, is definitely of the dwarfish type, his legs being only eighteen inches long. He testified that, upon boarding the train at Sumter, South Carolina, the conductor assisted him, and upon reaching Moncks Corner, his destination, he caught the conductor by the sleeve and inquired of him from which door he was expected to leave the train. The conductor denies assisting respondent upon boarding the train in Sumter, but admits that he did see him on the train and had seen him on previous occasions. Respondent's deformity and handicap was immediately apparent to all who saw him. It therefore became the duty of the agents, employees and servants of the appellant railway company, who was a public carrier for hire, to render such assistance to respondent as might be reasonable and necessary under the circumstances. *Brewer v. Atlantic Coast Line Railroad Co.*, 149 S. C. 454, 147 S. E. 596.

Respondent's condition was not only reasonably apparent to all persons thereabout, but when he made his inquiry of the conductor, it is difficult to see how respondent's condition could have escaped his notice. This, taken into consideration with the fact that it was a distance of eleven inches from the lower step to the box and twenty-three inches from the lower step to the ground, is evidence to be considered by the jury in determining whether or not appellant's agents and servants were remiss in their duty in failing to render assistance to respondent.

Upon approaching the steps, respondent found two passengers behind him and not wishing to delay these passengers, he attempted to step off on to the box without assistance and without requesting any. This, however, in my opinion, does not excuse the appellant railway company for its neglect of duty in failing to render assistance. One witness testified that there was no one present to assist respondent and another testified that the conductor was approximately five feet away. His deformity was of an extreme nature and was

known or should have been known to the conductor under the circumstances just related. It was, therefore, his duty to render such assistance as was reasonably necessary.

For the foregoing reasons, I am of the opinion that the evidence was sufficient to require the Trial Judge to submit the case to the jury upon the question of actual damages. I would therefore affirm the verdict as to actual damages and reverse as to punitive damages.

STUKES, J., concurs.