Ben T. HONEA, Appellant,

v.

**WEST VIRGINIA PULP AND PAPER COMPANY, a corporation, and Jervis B. Webb Company of Georgia, Appellees.**

No. 10445.

United States Court of Appeals Fourth Circuit.

Argued June 1, 1966.

Decided June 30, 1967.

Gedney M. Howe, Jr., Charleston, S. C. (Joseph R. Young and Morris D. Rosen, Charleston, S. C., on brief), for appellant.

Wm. H. Grimball, Jr., Charleston, S. C. (D. A. Brockinton, Jr., Grimball & Cabaniss, and Brockinton & Brockinton, Charleston, S. C., on brief), for appellees.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

BOREMAN, Circuit Judge.

Attacked on appeal in this personal injury action are (1) the trial court's charge to the jury on the issue of assumption of risk, and (2) the court's refusal to submit to the jury the question of the defendant's willful, wanton and reckless misconduct.

Plaintiffs, Ben T. Honea and the Standard Accident Insurance Company, brought this action against West Virginia Pulp and Paper Company (hereafter defendant or Pulp Company) in the federal district court at Charleston, South Carolina, for injuries sustained by Honea on the defendant's premises. Honea was on Pulp Company's property pursuant to his employment as a welder with the Jervis B. Webb Company of Georgia (hereafter Webb) which was under contract to install certain equipment at defendant's plant located in North Charleston, South Carolina. Standard Accident Insurance Company, Webb's insurance carrier under the South Carolina Workmen's Compensation Act, paid Honea compensation for his injuries and joined his suit as a party plaintiff. Pulp Company, as third-party plaintiff, brought in Webb as a third-party defendant. Jurisdiction was based on diversity of citizenship and the amount in controversy in excess of $10,000.00. The jury

rendered a verdict in favor of defendant. Perceiving no error, we affirm.

The contract between defendant and Webb provided that the latter would install a rollout table on the first floor of defendant's paper manufacturing plant. The paper was produced on the second floor of the plant and conveyed to the first floor by means of a lift or "lowerator."

The rollout table was to be installed immediately adjacent to the lowerator in order to expedite unloading procedure. There was an excavation, three feet in depth, next to the lowerator shaft and the beams and supports for the rollout table were to be anchored in the excavation. Work began on the project on Monday, September 25, 1961, and was proceeding in orderly fashion. Knowing that welding would be necessary, Webb contacted the Local Ironworkers Union for a welder and the union contacted Honea who reported for work on September 27. He was ordered to work in the excavation where he was to burn and weld girders and tighten bolts and he worked there from about 8:00 A.M. until noon when he stopped for lunch. At 12:-25 P.M. he resumed work in the excavation at the same task. At about 1:00 P.M. while he was working with his back to the lowerator, with one leg in the shaft, the apparatus descended and crushed his leg beneath it.

The lowerator was described as being a hydraulic-powered lift, with a cylinder beneath it, similar to the lifts generally used in service stations. It had two sides but was open in the front and rear. The lowerator moved quite slowly and required from ninety seconds to two minutes to travel the distance between the first and second floors. It could only be moved from the second to the first floor by pushing a button on the second floor and was sent "blind" to the first floor. This was a safety device to insure that someone on the first floor could not summon the lowerator while persons on the second floor were in and about it. The upward movement was controlled by a push button on the first floor. When the apparatus was in motion a bell would ring to warn those in the area of its approach and there was a large red button on the first floor which, if pressed, would stop the lift within one to two seconds.

Honea testified that his welding work required him to wear goggles and a helmet in order to protect his face and that he was wearing such equipment at the time of the accident. While there was uncontradicted evidence that defendant's employees had warned Webb of the danger posed by the lowerator, Honea stated that he had not been warned of such peril. When working in the excavation he observed the cylinder but was unaware of the lowerator, so he said. He testified further that he did not hear the warning bell at the time of the accident.

Honea contends that defendant had assigned one member of a four-man crew to serve as a guard in the area of the lowerator and to push the stop button if a dangerous situation developed. It is suggested that Honea was unable to hear the warning bell because of the equipment he was wearing and because of the loud noises in the plant. Plaintiff produced at least four witnesses who testified that Willie Robinson, an employee of defendant, stood by and stopped the lowerator on the two previous days in which Webb's employees were on the defendant's premises. These witnesses included Robinson himself who characterized his job as lowerator guard and unloader. He stated that at the time of the accident he had moved away from the stop button at the front of the lowerator and was in the rear loading some paper onto a towmotor. Webb employees Travis Griffin, and his brother, Keith Griffin, foreman and supervisor respectively, testified that employees of defendant had warned them of the lowerator hazard at the time they came to the plant, two days prior to the accident, and that they in turn had warned Honea that the apparatus would be in operation and to listen for the warning bell. They further testified that on the two previous days Robinson had been at the stop but-

ton and that they had come to rely on him to stop the lowerator.

Evans, an employee of defendant, testified that, in addition to his other duties, Robinson served as a lowerator guard; that he saw the lowerator descending toward Honea and he shouted a warning but that it went unheard.

There was testimony by supervisors that Robinson was not a guard, that on the day of the accident the lowerator had made twelve to sixteen trips prior to the time of the accident and that the warning bell was ringing loud and clear.

The jury absolved the defendant of any negligence by its verdict in defendant's favor. Plaintiffs contend that it was error to instruct the jury on assumption of risk for the reason that this defense rests on a theory of contract rather than tort and is only available in actions by a servant against his master; and, that clearly there was no master-servant relationship existing between defendant and Honea.

■■ We conclude that under South Carolina law, applicable here, assumption of risk is available as a defense in actions where a master-servant relationship exists but is available also where there is no such contractual relationship between the parties. The case of Baker v. Clark, 233 S.C. 20, 103 S.E.2d 395 (1958), makes this clear. There the plaintiff, who suffered injuries in a fall on defendant's premises, was denied recovery because she had been adequately warned and thereupon assumed the risk incident to walking on a slippery floor. She was a customer of defendant but had been given permission by defendant's employee to use the ladies' restroom which was provided for the use of defendant's female employees only. The Supreme Court of South Carolina assumed that plaintiff was an invitee and stated that it is well settled that "if a plaintiff freely and voluntarily enters into some relation with a defendant which presents obvious danger, he will be regarded as impliedly agreeing to look out for himself and to relieve the de-

fendant of responsibility." Id. at 103 S.E.2d 396 (citations omitted). The court pointed out that

"There is some confusion in the cases as to whether a defense of this kind should be characterized as contributory negligence or assumption of risk. The two are closely associated. As pointed out by Professor Prosser * * *, in the early decisions the doctrine of assumption of risk was confined to cases arising out of the relation of master and servant but *it is now recognized that the basis of the defense is not contract but consent, and that it is available in many cases where no contract exists.*" Id. at 103 S.E.2d 397. (Emphasis added.)

There are also several earlier cases permitting the defense of assumption of risk in factual situations where no master-servant relationship existed. See Singletary v. Atlantic Coast Line R. Co., 217 S.C. 212, 60 S.E.2d 305, 30 A.L.R.2d 326 (1950); Nettles v. Your Ice Co., 191 S.C. 429, 4 S.E.2d 797 (1939); Bolen v. Strange, 192 S.C. 284, 6 S.E.2d 466 (1939); Augustine v. Christopoulo, 196 S.C. 381, 13 S.E.2d 918 (1941). Discussion of these cases would seem to serve no useful purpose in light of the clear statement in Baker v. Clark, supra, 103 S.E.2d 395.

Plaintiffs cite several cases in support of their contention. None of these cases is concerned with the precise issue before us. In Cooper v. Mayes, 234 S.C. 491, 109 S.E.2d 12 (1959), the court did state that "[a]ssumption of risk, in its true sense, rests in contract, not tort," but the court did not exclude its application to other noncontractual situations. In *Cooper* a contractual relationship did actually exist in which plaintiff was employed by defendant to install a wiring system around defendant's farm. In the course of such work plaintiff was injured; he sued in tort for his injuries. The court was not concerned with a noncontractual relationship and its decision must be limited to the facts of the case. No mention was made of Baker v. Clark, supra, 103 S.E.2d 395, and we must as-

sume its holding is still the law of South Carolina.

Lawless v. Fraser, 244 S.C. 501, 137 S.E.2d 591 (1964), also relied upon by plaintiffs, dealt with the question of ordinary negligence and contributory negligence and did not discuss the defense of assumption of risk, but merely stated that it was not applicable under the circumstances, relying on Cooper v. Mayes. In *Lawless* plaintiff was an employee of a service station and was injured while attempting to start the stalled automobile of defendant, a service station customer. Defendant had instructed him to stand on the bumpers of his car and a service truck while his car was being pushed. Defendant promised to warn him at the time the cars were separated. No warning was issued and plaintiff was injured when he fell in the path of the truck. It was found that plaintiff was not guilty of contributory negligence in standing on the bumpers and that he acted reasonably in reliance on defendant's promise to warn. In stating, without explanation, that the defense of assumption of risk was not there applicable the court was not necessarily holding that it could not be asserted as a legal defense to such action under proper circumstances. The court did not mention Baker v. Clark, supra, or other South Carolina authorities in point.

Honea next complains that the court erred in its instruction on assumption of risk by using the following language: "When one takes employment under another, he assumes the natural and ordinary risks of such employment." It is contended that this language misled the jury into believing that plaintiff was a common-law employee or a "statutory employee" of defendant, Pulp Company, and that he had assumed the risks pursuant to such employment when, in fact, he was an invitee.

The Workmen's Compensation Act (Code of Laws of South Carolina, § 72–111 [1962]) of South Carolina provides that when an owner enters into a contract whereby another undertakes to perform or execute any work which is a part of the owner's trade, business or occupation, the owner shall be liable to pay to any workman employed in the work any compensation under the Act which the owner would have been liable to pay if the workman had been immediately employed by the owner. Defendant was asserting as an affirmative defense that Webb was performing work which was a part of Pulp Company's usual trade, business or occupation, that Honea, Webb's employee, was injured in the course of such work, had been paid all benefits provided by the Workmen's Compensation Act and was therefore precluded from bringing suit against Pulp Company. It was argued that since defendant raised the defense of Honea's status of "statutory employee" under the Workmen's Compensation Act the one sentence above quoted tended to resolve that question for the jury.

In his brief Honea states: "The trial judge *over objection of plaintiff* * * * instructed and submitted to the jury a charge on the doctrine of assumption of risk." (Emphasis added.) It is true that the trial judge advised counsel as to the substance of the matters to be covered by the charge. Honea's counsel indicated a general objection to the giving of an instruction based upon the doctrine of assumption of risk. However, subsequent to the charging of the jury, there was no objection interposed by counsel to that part of the charge as above quoted which is now attacked as erroneous, confusing and misleading. The very first challenge to that particular portion of the charge now attacked was asserted on Honea's motion to set aside the verdict and for a new trial. Rule 51 F.R.Civ.P. clearly states that no party may assign as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. The very purpose of the rule is to give the trial judge the opportunity to correct any error brought to his attention before the case is submitted to the jury for decision.

Thus it appears that Honea failed to comply with the provisions of Rule 51.

■■ In any event, we find no merit in the plaintiff's contention respecting errors in the charge to the jury. The charge is to be considered as a whole and it is improper to consider a single sentence or word in isolation. Upon a review of the entire charge it appears that the jury could not have been left in doubt concerning the fact that plaintiff was not, in any sense, an employee of the defendant Pulp Company but was an invitee. Excerpted from the court's charge is the following:

> "I further charge you as a matter of law that under the facts of this case, at the time of the subject accident, plaintiff Ben T. Honea was an invitee upon the premises of the owner-defendant West Virginia Pulp and Paper Company.

> "Under the law, a property owner, such as the defendant in this case, owes to an invitee, such as the plaintiff Ben T. Honea, the duty of ordinary and reasonable care to provide him a safe place to work. * * *."

Plaintiff complains of the court's refusal to submit to the jury an issue with respect to defendant's willful, wanton and reckless misconduct. It is agreed that under South Carolina law plaintiff's own negligence would not bar his recovery if defendant were guilty of willful, wanton and reckless misconduct. Honea argues that defendant retained exclusive control of the lowerator while Webb and its employees were working in the plant and that defendant's failure to maintain a guard to operate its safety device could be found by a jury to be a willful, wanton, reckless and conscious disregard of plaintiff's rights.

Plaintiff points to a decision of this court construing South Carolina law which held that in South Carolina a case of willfulness justifying punitive damages will lie when the wrongdoer does not actually realize that he has invaded the rights of the plaintiff if he does the act in such a manner that a person of ordi-nary prudence would say that it was a reckless disregard of another's rights. Pepsi-Cola Distributors of Charleston, Inc. v. Barker, 274 F.2d 372, 375 (4 Cir. 1960). That case involved an automobile accident in which plaintiff was injured and the evidence was such that the jury could find that defendant's servant failed to observe a red light and had failed to maintain a proper lookout. This decision relies in part on Hicks v. McCandlish, 221 S.C. 410, 70 S.E.2d 629 (1952), another case involving an automobile accident. There the Supreme Court of South Carolina discussed the relevant cases defining willful, wanton and reckless misconduct and stated that, under the law of South Carolina, exemplary damages may be awarded when the wrongdoer is not conscious of his invasion of the plaintiff's rights if the act is done in such a manner that a person of "ordinary reason and prudence would say that it was reckless disregard of the rights of the plaintiff." 70 S.E.2d at 631. However, these cases and subsequent South Carolina decisions are either concerned with automobile accidents, or the failure of a safety device, such as a railroad crossing signal. In South Carolina an automobile has been judicially held to be a dangerous instrumentality. Yaun v. Baldridge, 243 S.C. 414, 134 S.E.2d 248 (1964). Even mere inattention by the operator of an automobile has been held to raise a jury issue as to his willfulness, wantonness and recklessness. Shearer v. DeShon, 240 S. C. 472, 126 S.E.2d 514 (1962).

■ In the instant case defendant owed a duty to Webb and Webb's employees as invitees to provide them with a safe place in which to work and to warn them of any hidden dangers. The evidence is uncontradicted that defendant notified Webb through the latter's supervisor, Keith Griffin, and its foreman, Travis Griffin, that the lowerator would be in normal operation and that a warning bell would be sounding continuously when the apparatus was in use. It is uncontradicted that the lowerator ascended and descended numerous times while Honea was working in and about the ex-

cavation, that it was not concealed from view but was open and obvious and that the warning bell was sounding when it was in motion. The excavation in which the rollout table was being installed was adjacent to the lowerator shaft as clearly demonstrated by his position at the time of his injury. Honea denied that the Griffins warned him of the lowerator and its continued use, but they testified to the contrary.

■■ Under these circumstances we reach the conclusion that Pulp Company was not required to seek out all of Webb's employees and warn each of them of the lowerator or any other patent danger incident to working on the premises. We hold that Pulp Company had a right to rely upon Webb's supervisory personnel to relay the warning notice, which they had received, to Webb's other employees who were at all times under Webb's sole direction and supervision. An owner or occupier of land or buildings owes to persons invited upon the premises the duty of exercising reasonable care for their safety and must warn them of *hidden* dangers of which they are unaware. However, he need not warn them of open and obvious dangers which would be discovered through the exercise of reasonable diligence and care. Bruno v. Pendleton Realty Co., 240 S.C. 46, 124 S.E.2d 580, 95 A.L.R.2d 1333 (1962); Baker v. Clark, supra, 103 S.E.2d 395; Bolen v. Strange, supra, 6 S.E.2d 466.

■■ Honea's denial that he was warned by his supervisors does not create a jury issue as between Honea and the defendant on the question of willfulness, wantonness and recklessness. This is not a case where the owner had exclusive control over the contractor or its employees. The uncontradicted evidence indicates that Webb, not the Pulp Company, had the right to direct Honea's activities. Thus the instant case is clearly distinguishable from the decision in Trent v. Atlantic City Electric Co., 334 F.2d 847 (3 Cir. 1964), cited and relied upon by Honea. In *Trent* the injured plaintiff was an employee of a subcontractor that was subject to the control of the defend-

ant owner with regard to all phases of the work being done on defendant's premises. *Trent* did not involve the issue of willful, wanton and reckless misconduct and plaintiff received no punitive damages. Here defendant retained control of its lowerator for use in its regular operations but this cannot serve to *enlarge* the duty owed to its invitees. There was an issue as to whether defendant was negligent in its operation of the lowerator and the jury, under proper instructions, obviously resolved the issue against the injured plaintiff.

Affirmed.